Russell v. Berkstresser.

RUSSELL, *Plaintiff in Error*, v. BERKSTRESSER.

77  417
31a 349
77  417
36a 315

1. **Practice:** ORDER OF PROOF. The order of proof is largely within the discretion of the trial court. It is not error to receive evidence of a parol agreement concerning land before any evidence is given of the acts of performance relied upon to meet the objection that, under the statute of frauds the agreement must be in writing.

2. ――――: VARIANCE: PLEADING. An answer construed and held to plead a parol agreement between the parties: by plaintiff, to cancel defendant's notes given upon the purchase of land: by defendant, to surrender possession of the land to the plaintiff: and a performance by defendant of his part of the agreement. Evidence examined and held not to be at variance with the pleading.

3. ――――. An answer alleged that in pursuance of an agreement by plaintiff to cancel defendant's notes, and by defendant to surrender the possession of certain premises, defendant permitted plaintiff to take possession thereof, and to have the improvements and betterments. *Held*, that the answer contained an indirect allegation that it was part of the agreement, that plaintiff should have the improvements, and that under such allegation it was competent to show that there were improvements, and the character of them.

4. **Statute of Frauds:** PERFORMANCE OF PAROL CONTRACT. In a suit upon notes given by defendant to plaintiff for land, afterward sold under a power of sale contained in a mortgage securing payment thereof, and bid in by plaintiff, it is a good defense to establish a parol agreement by the plaintiff to cancel the notes in consideration that defendant surrender to plaintiff the possession of the land, and a surrender and acceptance of possession in pursuance of the agreement.

5. **Practice, Supreme Court:** CASE IN EQUITY: EQUITY OF REDEMPTION: EVIDENCE. In a suit upon notes given by defendant to plaintiff for land, which, the notes being due and unpaid, the plaintiff sold in virtue of a power of sale contained in the mortgage securing the same, and bid in for himself through the intervention of a third party, the defense was an executed parol agreement on the part of the defendant to surrender the possession of the land, and to waive and surrender all right of redemption, in consideration of the cancellation of the notes. *Held*, that the equity of redemption involved did not make this an equity case: and being an action as at common law, the Supreme Court would not weigh the evidence.

6. ――――. The Supreme Court will not reverse on the ground that, in an action as at common law, a verdict is against the weight of evidence, where there is not an absolute failure thereof.

27—77

7.   **Vendor and Vendee :** EXECUTED CONTRACT : CONSIDERATION.  The surrender of the possession of real estate by the vendee and its acceptance by the vendor, will be held to extinguish the vendee's liability for the purchase money, where such was the agreement between the parties.

*Error to Cass Circuit Court.*—HON. NOAH M. GIVAN, Judge.

AFFIRMED.

*Boggess, Cravens & Moore* for plaintiff in error.

*Adams & Sherlock* and *Comingo & Slover* for defendant in error.

WINSLOW, C.—This is an action on three promissory notes executed by defendant to plaintiff, each for $450, all bearing the same date, but payable at different dates, with compound interest at ten per cent, with a credit indorsed on the one first maturing of $168.

The answer, after a general denial, and the statement that the notes were executed solely in consideration of the purchase money of certain land, states :  "That on the 29th day of July, 1873, the date of said notes, plaintiff executed to defendant a conveyance of said real estate, whereby the said plaintiff covenanted with the defendant that he, the plaintiff, was seized of an indefeasible estate in fee simple of, in and to the premises aforesaid.  (Here follows the statement of an agreement, of which there was no evidence.)   That after said notes became due, the said plaintiff advertised and sold said land by virtue of the power contained in a mortgage executed by said defendant to said plaintiff at the date of said notes, and at such sale, one J. P. Barron, by the connivance and procurement of said plaintiff, bid in said land for the benefit and for the use of plaintiff only, and it was then and there agreed by and between said plaintiff and defendant that if he, the said defendant, would surrender to plaintiff the possession of the said premises and permit him, the plaintiff, to oc-

cupy the same, that he would cancel said notes, and release defendant from any further liability thereon, as was originally understood and agreed; and in pursuance of said several agreements, defendant did permit plaintiff to enter upon and take possession of said premises, and enjoy the rents and profits thereof, and have the improvements and betterments, and .waived and surrendered to plaintiff the right to redeem said premises from the sale under said mortgage."

The reply to this answer, after a general denial, alleges: "That the contract and agreement alleged in said answer to have been made between plaintiff and defendant, by which said defendant was to surrender and deliver to plaintiff possession and all his right, title and interest in and to certain land in said answer mentioned, was made by parol and not in writing."

There was a trial by jury, which resulted in a verdict and judgment for defendant, to reverse which the plaintiff brings the record to this court by writ of error.

On the trial, the defendant offered himself as a witness, and offered to prove certain facts, to which plaintiff objected, the court overruled the objection, the testimony .was admitted, and plaintiff excepted. This action of the court constitutes a preliminary question to be first considered. This testimony is as follows: " Some ten.days, or more, prior to the sale of said land under a mortgage by said defendant to said plaintiff, which sale occurred on the 26th of November, 1877, he, said defendant, met the plaintiff at his house in Pleasant Hill, and it was then agreed, by and between said plaintiff and said defendant, that said plaintiff should, at such mortgage sale, purchase said land or have the same purchased for himself; that defendant should surrender the possession of said land, with all the improvements and the payments made thereon, and that said plaintiff would surrender to defendant or cancel said notes; that about thirty days after the occurrence of said mortgage sale, defendant met plaintiff at the town of

Pleasant Hill, and it was then agreed by and between said plaintiff and defendant, that plaintiff might, at his own pleasure, take possession of said land, in accordance with the former agreement, and that said plaintiff would surrender said notes to defendant—plaintiff said all right—or, cancel them; that thereupon defendant abandoned the possession of said land, and plaintiff afterward took possession of the same; that since he bought said land and took possession thereof in 1873, he had made a quarter and a half-quarter of a mile of fence thereon, and had seeded fifteen acres thereof in timothy." As to the first two statements above quoted the objections were: "Because no such contract was pleaded by defendant in his answer; because the alleged agreement was concerning the sale of land or some interest therein, and is shown to be by parol only; and because there was no sufficient consideration for said alleged agreement, as shown either in defendant's said answer or by said evidence."

The last two objections are clearly untenable. The very purpose of the testimony was to obviate the objection that the contract was not in writing, and to show a state of facts tending to relieve it from the operation of the statute of frauds. Unless the defendant was permitted to show the contract and its terms, he could not proceed to show the acts of performance relied on to relieve it from the statute, and that would end his case. He was not bound to show acts of performance as the first step in his proof. The order in which testimony shall be introduced is largely within the discretion of the trial court. *Powell v. Hannibal & St. Jo. R. R. Co.*, 35 Mo. 457; *State v. Daubert*, 42 Mo. 239. There was no abuse of this discretion in this case.

1. PRACTICE: order of proof.

The objection, that no such contract was pleaded in the answer, was evidently based on a misconception of the answer. That portion of the answer commences with the allegation that "after the notes became due," the plaintiff advertised the land under

2.——— variance: pleading.

the mortgage, and bid it in for his own benefit, through the intervention of one Barron. Here, then, is a period of time stated commencing with the maturity of the notes, covering the advertisement of the property, the sale and the perfection of the title in plaintiff, through Barron. Then follows the allegation, in close connection, that "it was then and there agreed," etc. There is no warrant for saying that "then and there" means on the day of the sale. It is more natural and liberal to construe it as referring to the period of time during which the preceding events were transpiring, covering a period before and after the sale, because it may be inferred that the intervention of Barron caused some delay in perfecting plaintiff's purchase. Evidence of a contract initiated prior to the sale, a purchase by plaintiff at the sale, and a subsequent re-statement of the same contract, was not in contradiction of the answer, but tended to prove its allegations. The contract was the same whenever made, and the supposed discrepancy relates only to its date, which is not specifically alleged in the answer. Moreover, it will be observed that the last conversation testified to had reference to the surrender of the possession and the notes, under a preceding contract to that effect, and not to a new contract then made. Right in that connection the defendant testifies that he thereupon "abandoned the possession of said land, and plaintiff afterward took possession of the same." This evidence was admissible as tending to show performance.

As to the objection to the testimony concerning the fence and seeding the land, based on the ground that it 3. ——. was irrelevant and incompetent under the pleadings, and not alleged in the answer as a consideration for the contract, it is sufficient to call attention to the answer, wherein it is alleged that "in pursuance of said several agreements," which includes the one in question, defendant permitted plaintiff to "take possession of said premises, and enjoy the rents and profits, and have the improvements and betterments." Here is an indirect alle-

gation that it was a part of the contract that plaintiff should have "the betterments and improvements," under which it was competent to show the character of the improvements. If there had been no improvements, counsel would have been swift to show the fact in support of their case, and as contradicting defendant. The existence of improvements was a very material part of defendant's case, there was sufficient in the answer to justify the admission of evidence on the subject, and the court committed no error in permitting it to be introduced. Its absence would have seriously embarrassed defendant's case.

Defendant, in addition to the testimony above quoted, gave evidence tending to show that when he went to see plaintiff at Pleasant Hill, on the first occasion stated, it was for the purpose of paying him another note, not in any way connected with those in suit, which he did pay off; and also for the purpose of making the arrangement about the notes in suit, as already stated; that the only acts of ownership he had ever known plaintiff to exercise over the land, since defendant abandoned it, was in May or June, 1878, when he saw plaintiff ride over it and drive off some cattle; that he again saw plaintiff riding over the land on horseback in the fall of the same year, and that at the time he saw plaintiff riding over the land, the fences were down and removed in places, so that any one could go on it without obstruction. It was admitted that the notes sued on were given solely for the purchase money of the land; that plaintiff sold the land as mortgagee, and Barron purchased it for him at $8 per acre, and that Barron has since conveyed it to plaintiff, pursuant to said arrangement.

The plaintiff, in his own testimony, admits the first conversation at Pleasant Hill, but says it concerned the payment of another note, and that no such arrangement as that testified to by defendant was made or talked of; that there was no such conversation or arrangement, after the sale, as that testified to by defendant, and that there

never had been any such conversation between them, at any time or place. Plaintiff further testifies that he had " never been on or seen said land from the time of the sale thereof to defendant, in 1873, until about May or June, 1878, after said mortgage sale; that about the date last aforesaid he passed over said land on horseback, found the fences down and some cattle pasturing thereon, and drove said cattle off said land; that about the time of so driving said cattle off said land, he learned from one Lamb, who lived in a school-house near by said land, that said cattle belonged to said Lamb; that he thereupon employed said Lamb to repair said fences on said land, and agreed to allow said Lamb to pasture his cattle thereon; that he was not again on or to see said land until in the fall of 1878, when he again rode over said land on horseback. These are the only acts of ownership, or of possession he has exercised over said land since he first sold and conveyed the same to defendant in 1873, save only that he has paid the taxes thereon since said mortgage sale; that he has so paid said taxes, and did these acts of ownership and possession of and over said land, solely because he thought and believed that, having purchased said land at said mortgage sale, as before stated, he had thereby acquired the title thereto, and had a right to the possession thereof, and the right to enter thereon."

Plaintiff introduced a witness who testified to a conversation with defendant, in the fall of 1876, in which defendant said he had paid plaintiff all he ever intended paying him on the land; also another witness who testified to a conversation with defendant, at the house of witness, on the day of the sale, in which defendant's liability on the notes was mentioned, in which the latter said nothing about the contract now relied on, but suggested an act of the legislature, which he supposed to have been passed, as a probable means of relief.

This was all the testimony in the case. The court gave the jury two instructions—the first quoted, at the

instance of defendant, and the last of its own motion—as follows :

"If the jury believe from the evidence that plaintiff, at any time pending the advertisement of said land for sale under plaintiff's mortgage, or at any time after said sale, agreed with defendant, that if he would surrender to plaintiff the possession of said land so sold by plaintiff, that he, plaintiff, would cancel or surrender to defendant the notes sued on in this cause, and in pursuance of said alleged agreement defendant surrendered, and plaintiff took possession of said premises, then the jury will find for defendant on each count in the petition."

"The jury are instructed that they ought to find for the plaintiff in this cause, unless they shall believe from the evidence that said defendant and said plaintiff did make and enter into the agreement alleged by defendant in his answer, that said plaintiff would, in consideration of defendant's surrendering the land mentioned, surrender to said defendant the notes sued upon, and in pursuance of said alleged agreement defendant surrendered and plaintiff took possession of said premises; and it devolves upon defendant to make out and support the existence of the alleged agreement and possession thereunder by a preponderance of evidence ; and in weighing the evidence the jury should take into consideration all the facts and circumstances, acts and conduct of the parties as detailed in evidence."

The plaintiff asked the following instruction, which the court refused :

"The jury ought to find for the plaintiff in this case, unless they shall believe from the evidence that defendant and plaintiff did make and enter into the contract alleged in defendant's answer, in writing, that plaintiff would, in consideration of defendant's surrendering to him the land mentioned in the pleadings, surrender to defendant the notes sued upon in this cause; or, unless the jury shall further believe from the evidence that plaintiff and de-

fendant made and entered into such contract or agreement, not in writing, as alleged in defendant's answer, and that by reason thereof, and under and pursuant thereto, defendant surrendered, and plaintiff took possession of such land, as part performance of such alleged agreement; and not by reason of any claim or right under the mortgage sale or deed from Barron to plaintiff. And the jury are further instructed that, in this case, it devolves upon defendant to make out and support the existence of said alleged agreement, and that said plaintiff did take possession of said land under and pursuant thereto, and by reason thereof, by a preponderance of the evidence. And in weighing the evidence, the jury should take into consideration all the facts and circumstances, acts and conduct of the parties, as detailed in the evidence."

It must be apparent from an examination and comparison of these instructions, the two given and the one refused, that they are alike in material substance, the only real difference being in phraseology. The expression of the one refused, that the contract must have been in writing, or the other facts must have existed, is made the apparent ground-work of those given. In fact the entire defense was based on an executed parol contract, and there was no necessity for telling the jury anything about a contract in writing. There is no perceivable difference, in legal effect, in any other part of these instructions. Where instructions are given which correctly declare the law, it is not error to refuse others on the same subject, which, also, properly declare the law. *Whetstone v. Shaw*, 70 Mo. 575; *Anthony v. Bartholow*, 69 Mo. 186; *State v. Gann*, 72 Mo. 374; *State v. Walton*, 74 Mo. 270; *Martin v. Smylee*, 55 Mo. 577.

In *Pratt v. Morrow*, 45 Mo. 404, a case with which both sides to this controversy seem satisfied, Bliss, J., delivering the unanimous opinion of the court, says: **4. STATUTE OF FRAUDS: performance of parol contract.** " It is certain that an unexecuted parol agreement to rescind, if a nude pact, cannot be

enforced; but if executed, courts will not inquire into the consideration nor disturb the condition in which parties have voluntarily placed themselves.   It is also true that a present indebtedness can in general only be discharged by payment, accord and satisfaction, or release under seal; yet when a contract of sale is actually rescinded, the restoration and acceptance of the property should be held to satisfy the obligation for the purchase money.   If the vendor agrees to take back what he has sold, and cancel the debt, it is an accord, and if he actually takes it back, it is a satisfaction.   But there is a broad distinction in this regard between an executed and an executory agreement. While an executory parol agreement, without new consideration, cannot be enforced, yet if the agreement be executed the act is a bar.   Thus, while a mere verbal promise, after breach, to cancel a contract of sale would be no defense to an action upon it, yet if the contract be actually canceled and the property surrendered, it is at an end, and the formality of a sealed release is wholly unnecessary. The effect of such an executed agreement is the same, whether the contract be sealed or otherwise.   The obligation, though it has become a subsisting debt, is discharged by the acts rather than agreement of the parties."

The questions of fact involved were submitted to the jury under proper instructions, there was a conflict of evidence as to the existence of the agreement, and the time and fact of its execution, there was evidence to sustain the verdict, and this court cannot, under its rulings, interfere with the verdict, whatever may be thought of the weight of evidence.

Counsel now suggest that this is an equity case, although they tried the issues as issues at law, and insist 5. PRACTICE, SU- that we should examine the case on the merits. PREME COURT: case in equity: We are not inclined to accept this view of equity of redemp- tion: evidence. the case.   The action was on notes for the purchase money of land, the defense was an executed parol contract of rescission of the sale of the land, under which

the notes were to be given up and canceled, and the possession and improvements of the land surrendered, and the reply was the statute of frauds, alleging that the contract concerned an interest in land and was not in writing. True, the interest involved was an equity of redemption, but the pleadings raised no equitable issues. In the case just cited, where the issues were similar, Bliss, J., referring to the conflict of testimony, says: " But, inasmuch as the issue of fact has been passed upon by the jury, we will not weigh the evidence, but only consider the questions of law involved." These remarks are applicable here.

We cannot say that there was an absolute failure of evidence. Even on the question of the execution of the contract before the institution of this suit, if that should be considered material, plaintiff testified that he had paid the taxes on the land "since said mortgage sale." Defendant testified that he abandoned the possession and improvements immediately, and that plaintiff thereafter took the possession. Other evidence was to the effect that plaintiff did not go upon the land in person until May or June, 1878, which was after the commencement of this suit, and the plaintiff testified that all the acts of possession done by him, including the payment of taxes, were in pursuance of his purchase; but there was evidence of a contract under which these acts might have been done; and it was the province of the jury to draw the proper inferences from the facts. Payment of taxes is an act of ownership, and is competent evidence tending to show possession, although not alone sufficient for that purpose. When defendant abandoned the possession and improvements, the legal seizin of plaintiff drew to it the possession, and he was in constructive possession from that time. These are elementary principles. Defendant executed the contract on his part, so far as he could; according to his testimony, the plaintiff commenced the exercise of acts of ownership over the land at the time of the sale;

and it was for the jury to find, from these and other facts before them, when the contract was executed.

Counsel for appellant insists that there was no consideration for the contract, and that it was a nullity; but in *Pratt v. Morrow, supra*, it is said that if the contract be executed, "courts will not inquire into the consideration, nor disturb the condition in which parties have voluntarily placed themselves." And, again, that when the contract " is actually rescinded, the restoration and acceptance of property should be held to satisfy the obligation for the purchase money." It thus appears that the question of consideration is not involved, the question being, has there been an actual rescission and a restoration and acceptance of the property. This question, as we have shown, was properly submitted to the jury, and the verdict must be held conclusive. ·

*7. VENDOR AND VENDEE: executed contract: consideration.*

We have considered this case on the theory presented by counsel for appellant, for the purpose of showing that the court properly submitted the issues to the jury on that theory, and would not be understood as accepting or rejecting the full extent of their position, simply holding that the law was properly declared, and that there was evidence to sustain the verdict.

The judgment should be affirmed.   All concur.