# TUCKER, Appellant, v. DOLAN, Respondent.

### St. Louis Court of Appeals, January 24, 1905.

1. **STATUTE OF FRAUDS:** Executed Contract: Consideration. The statute. of frauds, as it affects a contract for the sale of land, is satisfied by the execution .of a deed and delivery of the same with possession to the grantee, and a warranty deed so delivered is conclusive evidence of the contract between the parties except as to the recited consideration for it; the true consideration may be shown by extrinsic evidence.

2. **CONTRACT:** Consideration: Nudum Pactum. An agreement by a creditor to take less than what is due for the payment of his debt is without consideration and not binding upon him.

3. ——: ——: ——. Where a purchaser of land gave his notes for the purchase price, and afterwards by agreement the vendor agreed· to take less than the original price, the conveyance of the land by him to the purchaser and his wife was not a sufficient consideration for the agreement to take less than the original purchase price and did not constitute a defense to an action on a note given as part of the original purchase price, in the absence of evidence to show the wife was not to be included in the conveyance by the original contract, but was afterwards included as a consideration for the reduction in price.

4. ——: ——: ——. The evidence is examined and held insufficient to show a consideration for an agreement by the plaintiff to take less than the original contract price for land sold by him so as to constitute a defense by the purchaser to an action on a note given for part of the purchase price.

5. **CONDITIONAL SALE.** Where a contract signed by the plaintiff and defendant recites that the plaintiff places in the defendant's hands some cattle and that the defendant agrees to take care of them until his note to plaintiff (representing the purchase price) becomes due and when it is paid the plaintiff relinquishes all his right to the cattle and they shall become the property of the defendant, the transaction was a conditional sale, or an absolute one accompanied by a mortgage for the purchase-money, so that the defendant could not defeat an action on the note mentioned in the contract, on the ground that he had possession of the cattle to take care of for plaintiff at a specified compensation.

Appeal from Knox Circuit Court.—*Hon. Edwin R. McKee,* Judge.

REVERSED AND REMANDED.

*James Dorian* and *O. D. Jones* for appellant.

(1) There was no evidence on which to submit the issue of new agreement and release of the notes. (a) There was no allegation of an intention or agreement of plaintiff to surrender the notes without payment. (b) All of defendant's allegations in the answer and testimony to that effect was in the statute of frauds, pleaded in the reply, objected to on the trial on that ground, and asked to be excluded and withdrawn from the jury by instructions. The first oral agreement, possession and giving notes for, and part payment of the purchase-money, took it out of the statute and made it valid. Young v. Montgomery, 28 Mo. 604; Price v. Hart, 29 Mo. 171; Adair v. Adair, 78 Mo. 630; Bishop on Cont., sec. 164. To take the case out of the statute of frauds requiring certain agreements to be in writing, the contract must be evidenced by writing and can not be pieced out or added to by oral testimony. Buckman v. Dry Goods Co., 91 Mo. App. 454; Werner v. Mayer Co., 161 Mo. 112, 61 S. W. 644; Newman v. Bank, 70 Mo. App. 135. (2) The payment of a part of the debt is no consideration for an agreement to release the rest of it. "But were it necessary to do so, it is sufficient to say, that it is the established rule of this State that a part payment of a debt is ordinarily no satisfaction of the residue." Young v. Schofield, 132 Mo. 650, 34 S. W. 497; Winters v. Railroad, 160 Mo. 159, 61 S. W. 606; Goodson v. Assn., 91 Mo. App. 339. Here there was no dispute as to the amount due. That was determined by the settlement; the debt was all due. (3) As to the four hundred and sixty dollar note defendant admits he borrowed the money, gave

note for it, bought the cattle, took them home and kept them about three years. It was the duty of the court to construe it and the note and plainly state their legal, effect in law to the jury. Chapman v. Railroad, 114 Mo. 542, 21 S. W. 858; Lumber Co. v. Warner, 93 Mo. 374; Enterprise Works v. Sawyer, 55 Mo. App. 15. The court simply submitted the question of law to the jury whether the plaintiff ''owned the cattle.'' It can not make a new contract for the parties nor ignore the one that had been made. Machine Co. v. Bobst, 56 Mo. App. 427; Johnson Co. v. Wood, 84 Mo. 489.

*L. F. Cottey* and *F. H. McCullough* for respondent.

(1) The question as to whether or not there was an agreement between plaintiff and defendant to settle for $2,200 was fairly submitted to the jury under appropriate instructions, and the finding of the jury is conclusive. Floerke v. Distilling Co., 20 Mo. App. 76; Deutmann v. Kilpatrick, 46 Mo. App. 624; Kronenberger v. Binz, 56 Mo. 121. (2) The evidence of the plaintiff and the defendant, clearly discloses that the indebtedness between them was in dispute during all the time of its existence. The record shows that there was, about the month of September, or October, 1900, a well-understood compromise of such indebtedness, which was faithfully carried out on the part of the defendant. It is well-settled law that a compromise made and performed under such circumstances will be upheld. Riley v. Kershan, 52 Mo. 224; Coal Co. v. St. Louis, 145 Mo. 651, 47 S. W. 563; Andrews v. Contracting Co., 100 Mo. App. 599, 75 S. W. 178; McCormick v. St. Louis, 166 Mo. 335, 65 S. W. 1038. (3) When plaintiff accepted the $2,200 from defendant and executed and delivered the deed to the farm to defendant and his wife, in compliance with the previous agreement between plaintiff and defendant, it was equivalent to and in effect a conditional tender by defendant and acceptance by plaintiff. The settlement so made was legal and bind-

ing and will be upheld. Plaintiff, having accepted the tender and delivered the deed, is estopped to complain now that it was insufficient. The acceptance of a tender made upon a condition distinctly expressed, or necessarily implied from the circumstances is an acceptance of the condition. Lee v. Dodd, 20 Mo. App. 271; Maack v. Schneider, 51 Mo. App. 92; s. c., 57 Mo. App. 431; School Board v. Hull, 72 Mo. App. 403; Adams v. Helm, 55 Mo. 271. (4) Counsel for plaintiff contends that the agreement between plaintiff and defendant for payment of the $2,200 and the making of the deed and the surrender of the old notes was within the statute of frauds, requiring certain agreements to be in writing. The jury found that said agreement had been performed. The law is well settled that the performance of the contract by one contracting party forecloses his adversary from interposing the statute of frauds as a defense. Johnson v. Reading, 36 Mo. App. 315; Smock v. Smock, 37 Mo. App. 67; Marks v. Davis, 72 Mo. App. 562; Chenoweth v. Express Co., 93 Mo. App. 191; Suggett v. Carson, 26 Mo. 221; Self v. Cordell, 45 Mo. 345; McCornell v. Brayner, 63 Mo. 461; Winters v. Cherry, 78 Mo. 344; Nally v. Reading, 107 Mo. 355, 17 S. W. 978; Bless v. Jenkins, 129 Mo. 657, 31 S. W. 938; Nowack v. Berger, 133 Mo. 24, 34 S. W. 489. (5) With respect to the note for $460 plaintiff's position on the pleadings and evidence was, that the contract concerning the cattle was intended to be security for the note; that the cattle belonged to defendant, and that defendant was liable for the note. The contract was one from which different inferences might be drawn and were actually drawn by the parties to it. Under such circumstances it is well settled that it would have been error for the court to have refused to submit the question of fact of the ownership of the cattle to the jury. Blanke v. Dunnerman, 67 Mo. App. 596; Mfg. Co. v. Mertz & Hale, 80 S. W. 684; Wilcox v. Baer, 85 Mo. App. 592.

GOODE, J.—The petition in this case declares on three separate causes of action, each being a promissory note. The first count, or paragraph, is founded on a note for $1,480, dated February 1, 1896, due three years after date and drawing seven per cent interest. This note and another of the same date for $1,500, drawing the same rate of interest, were executed by Dolan to Tucker for the purchase-money of eighty-five acres of land in Knox county. The note for $1,500 is not in suit as it had been cancelled and surrendered before the suit was instituted. This land was bought by Tucker from Virginia Fickel September 25, 1896, for $3,300, and was conveyed by Tucker to Dolan and his wife, Mary C. Dolan, September 28, 1900. It was sold to Dolan by a verbal contract not later than December 2, 1896, and Dolan put into possession, the deed being executed nearly four years afterwards. Why the note for $1,500 was surrendered will appear below. Originally there was a separate action on the note for $1,480, the petition praying not only a judgment for the amount of the note, but the enforcement of a vendor's lien against the land. The demand for the lien was withdrawn and that action was consolidated with one on the two notes which are the subjects of the second and third counts of the petition. Before stating the facts in regard to the latter notes it will be convenient to go more fully into the land transactions out of which the note declared on in the first count grew. The plaintiff swore he bought that land for Dolan at a price he (plaintiff) deemed excessive, on an understanding that Dolan was to take it off his hands at the same price, and pursuant to that agreement Dolan executed the two notes for $1,500 and $1,480. The amount of these notes was $2,980, and what was done about the difference between that sum and the $3,300 Tucker said Dolan was to pay, was not explained. Another fact which is obscure, is why the two notes were dated

February 1, 1896, nearly eight months before Tucker had purchased the land from Mrs. Fickel and that long, or longer, before he put Dolan into possession of it. Tucker's explanation is that the notes were thus dated because Dolan expected to have some money in February, 1897, and could then pay the interest. But he admitted Dolan would only owe interest from September, 1896, and so no intelligible reason for dating the notes back was given. The defendant testified that Tucker, on his own motion, bought the land from Mrs. Fickel, but sold it to him (defendant) for $2,980 about December, 1896; that he executed the two notes for the purchase price not knowing they bore the date of February 1st, which was wrong. It should be stated that Tucker is a man ninety years old; that both he and Dolan are very illiterate and the latter is hard of hearing. The evidence discloses that they conducted their business in a careless manner and without a clear understanding of the effect of their acts. As stated, Dolan went into possession of the land in the latter part of the autumn or the beginning of the winter of 1896. He made valuable improvements on it from time to time and paid sums on the notes; but how much he paid before Tucker conveyed the land to him and his wife in September, 1900, is in dispute. The defendant testified that he had made payments at different times to the amount of $895.50, which is about sixty dollars more than the interest on the notes for the four years. The plaintiff swore only about $240 had been paid, or nearly six hundred dollars less than the interest. The defendant said that in September, 1900, both the notes given for the purchase-money of the land were discharged pursuant to an agreement then entered into between him and the plaintiff; that plaintiff at that time proposed that if defendant would pay $2,200 more than had been already paid on the notes, that sum would be received as full payment, the notes surrendered and the land conveyed; that the proposition was accepted,

$2,000 raised by giving a deed of trust on the land to a loan company and the money turned over to the plaintiff, who agreed to wait for the remaining $200; that the note for $1,500 was then surrendered. It is certain that on September 29, 1900, plaintiff conveyed the land to Dolan and his wife and surrendered the note for $1,500, and it is certain too, that he retained the one for $1,480, which is now in suit. At the same time, as both parties say, it was agreed that delinquent interest to the amount of $138 was owing on the two notes; so the note for $138, which constitutes the cause of action stated in the third count of the petition, was drawn up and signed by Dolan; but no credit was entered on the two principal notes for the amount of this interest note. The note last mentioned was dated February 6, 1900, though it was agreed by both parties that it was not given until the time of the execution of the deed in September, 1900; and this is another unaccountable discrepancy between the acts of the parties and their testimony. The defense to the note for $138 is twofold: that it was discharged by the performance of the new agreement made in September, 1900, by which Tucker accepted $2,200 in full payment of all the indebtedness then owing for the land, of which indebtedness this note for $138 represented a part. It was also pleaded that as there was no credit entered on the principal notes, there would be a double recovery for the same liability if the plaintiff obtained judgment on the note for $1,480 and on the smaller one too.

The note for $460 declared on in the second count of the petition, grew out of a transaction in cattle the facts of which are in dispute. It will be observed that the petition allows credit for a payment of $320 on that note and asks judgment for the balance due. The answer admits the payment of $320 as correct in amount but not as to time, and pleads payments aggregating $448.48. But the main defense to this note rests on the

transaction out of which it grew. The transaction is stated in this agreement:

"knox County, mo

June 27, 1899 this contract entered into this 27 day of June, 1899 between John Tucker and James dolen both of knox county wheas I John Tucker do place in the hands of sade dolen 20 cows which he agrees to take good car of same as if tha war his own until the above note becomes due on the 27 day of June in the year 19 hundred and one 1 and when said note and interest ar paid of I John Tucker give up all my write title and clam to those cows to said James dolen as his own property.

John Tucker
James Dolan."

That instrument, when translated, reads as follows:

"Knox County, Mo., June 27, 1899.

This contract entered into this 27th day of June, 1899, between John Tucker and James Dolan, both of Knox county, whereas, I, John Tucker, do place in the hands of said Dolan 20 cows which he agrees to take good care of same as if they were his own, until the above note becomes due on the 27th day of June, in the year 1901, and when said note and interest are paid off, I, John Tucker, give up all my right, title and claim to those 20 cows to said James Dolan as his own property.

"John Tucker,
"James Dolan."

It is agreed that the note for $460 represented the purchase price of the cattle mentioned in the foregoing memorandum. Both the contract and the note were written by Tucker and kept by him. The cows were put on defendant's land and remained there until disposed of and the proceeds turned over to the plaintiff.

The controversy is in regard to who owned the cattle. Plaintiff swore he bought them for Dolan at the latter's request, taking a note for their price; whereas, the defendant swore Tucker asked permission "to buy up" some cattle and put them on Dolan's farm to be cared for at fifty cents a month per head; that the cows were always owned by the plaintiff, who got uneasy about them during the drought of the summer of 1901 and insisted on Dolan's mortgaging them to the Bank of Edina, and turning the money over to the plaintiff; which was done, Dolan acting as Tucker's agent in the matter. The money realized by the mortgage was $281.90 and was paid by the bank to the plaintiff in person. The defendant testified also that Tucker got the proceeds of the calves the cows dropped, amounting to $125.

The statute of frauds was pleaded in the replication against the defense based on the alleged verbal contract by which the plaintiff agreed to accept $2,200 in satisfaction of the debt owed him for the land. Other matters of defense pleaded in the answer, in accordance with the above statement, were put in issue by the replication.

The jury returned a verdict for the defendant and the plaintiff appealed.

It will be seen that the evidence left a great uncertainty concerning the true facts of this controversy. It presented discrepancies for the jury to consider. Our task is to examine the rulings of the court on questions of law, and principally on the propositions raised by the instructions tendered.

It is said the statute of frauds is a barrier to the defense against the note for $1,480, as that defense rests on the alleged oral agreement that, for $2,200, Tucker would convey the land and release the notes previously given for the purchase price as fixed by the original agreement. The second agreement testified to by Dolan is oral and is asserted to have been for the sale of the

land, in lieu of the prior oral contract, and that it was
not relieved from the force of the statute of frauds by
Dolan's possession and improvements, as the first con-
tract was, because possession was taken and improve-
ments were made in partial performance of the first
contract and not the second one. The point at issue
is not the enforcement of a verbal sale of land, but
what was the consideration of a sale already consum-
mated by a conveyance. We have to deal with an ex-
ecuted and not an executory contract—a contract which
has been performed by both parties in every particular,
unless some of the purchase money remains unpaid as
the plaintiff contends; which question hangs on whether
the price originally stipulated was changed by a later
valid agreement. A warranty deed was delivered, vest-
ing the title to the land in the defendant and his wife;
and there being no contention of mistake or fraud, that
instrument is the conclusive evidence of the contract
between the parties, except as to the consideration for
it. [Jones v. Shepley, 90 Mo. 307, 2 S. W. 400.] The
true consideration can be shown by extrinsic evidence.
[See v. Mallonee, 107 Mo. App. 721, 82 S. W. 557.] The
deed recites a consideration of $2,200, the very sum
Dolan said he was to pay in addition to what he had
already paid. Now the defense to the note is that it
was extinguished by the agreement to accept $2,200 in
full payment of the notes, and the performance of that
agreement. The issue raised by the defense relative
to the consideration for the sale and conveyance of the
land is not affected by the statute of frauds. The ver-
bal sale was taken out of the statute by the conveyance
to and the possession of the defendant and wife, and
the sole question remaining is whether a balance on the
purchase-price is due. If the contract of sale remained
unexecuted, our conclusion might be different. [Rucker
v. Harrington, 52 Mo. App. 481; Pratt v. Morrow, 45
Mo. 404; Grumley v. Webb, 48 Mo. 562; Russell v. Berk-
stretter, 77 Mo. 417; Trayer v. Reed, 45 Iowa 272.]

See, also, Century Digest, vol. 23, sec. 295, where many cases are collected on the point that the effect of the statute of frauds on a contract for the sale of land is obviated by the execution of a deed and delivery of possession.

Another proposition invoked in behalf of the plaintiff is that the agreement testified by Dolan to have been made in September, 1900, that the balance of more than $2,200 then due and owing on the two notes should be satisfied and discharged by the payment of said sum, is inoperative for want of a consideration, because a debt already due can not be discharged by paying less than the full amount of it. Unquestionably Dolan owed more than $2,200 for the land at the time the supposed agreement was made. According to his own statement he owed $2,900 or more, as he had paid but $60 above the interest on the notes during the four years. It is an ancient rule of law, often denounced but always followed, that though a creditor agrees to accept less than his matured debt in full payment, he may, nevertheless, collect the balance. Riley v. Kershan, 52 Mo. 224; Young v. Schofield, 132 Mo. 650, 34 S. W. 497; Winter v. Railroad, 160 Mo. 159, 61 S. W. 606; Jaffray v. Davis, 124 N. Y. 164.] The reason for the rule is that the agreement to take less than what is owing is a compact without a consideration to support it, and, therefore, is not binding. This sort of an agreement, as much as any other accord and satisfaction, needs a consideration; and if one party merely agrees to do what he is already bound to do, there is no consideration. [3 Randolph. Com. Paper (2 Ed.), sec. 1835; 1 Beach, Contracts, sec. 424; Smith v. Bartholomew, 1 Metc. (Mass.) 276; Swope v. Bier, 10 Ind. App. 613; Curran v. Rummell, 118 Mass. 482; Wendover v. Baker, 121 Mo. 273, 25 S. W. 918.] The case last cited resembles this one closely and as it was decided by our Supreme Court is a controlling precedent. A deed of trust given by Baker to secure three promissory

notes had been foreclosed by sale leaving a balance due on the notes, which balance was the subject-matter of the action. Baker sought to interpose as a defense, an agreement by which the plaintiff prior to the sale had agreed to cancel and surrender the notes after the sale, whatever the property realized, if Baker would give possession of the property without delay, which he did. This defense was overruled, because, as the notes were past due when the agreement was made, there was no consideration for the plaintiff's undertaking to accept less than her debt in discharge of it. The defendant's counsel concedes the rule to be as stated, and has attempted to point us to several considerations sufficient to support the agreement. It is said that according to the original agreement for the sale of the land, it was to be deeded to the defendant alone; whereas, according to the substituted agreement, it was to be deeded to the defendant and his wife, plaintiff's daughter; and that this was the consideration for the plaintiff's promise to accept less than was due. If there was proof of such an understanding, it would be a sufficient consideration, as the defendant would have consented to relinquish a right and an interest. But there was no evidence tending to prove the parties ever discussed the question of who should be named as grantees in the conveyance. The supposed agreement rests, as to its details, exclusively on the testimony of the defendant, though it is corroborated by Mr. Cottey's testimony that the plaintiff told him he (plaintiff) would make the deed on payment of $2,000 and take Dolan and his wife for the remaining $200. This conversation occurred after the defendant had applied to Mr. Cottey, as representative of the loan company, for a loan on the property. Before making the loan Mr. Cottey sought information from the plaintiff in regard to the title and plaintiff made the statement we have recited. The witness had no knowledge of the consideration for the agreement, or, at least, does not under-

take to state any; and really the effect of his testimony is that Tucker merely agreed to convey the land on payment of $2,000 free from all liens and claims of his, so that the title would be vested perfectly in the defendant and his wife. What Mr. Cottey was concerned to know was not the particulars of the agreement between plaintiff and defendant, but that he would be lending on a good title. In the defendant's own testimony there is nothing from which an inference or conclusion can be drawn as to the consideration or motive which influenced the plaintiff to agree to take less than was owing  The substance of defendant's testimony on the point is contained in this excerpt from the record:

"Q.  Go ahead and tell what it was and about when it was.  A.  Well, in 1900, Mr. Tucker, on the 6th day of October, made a deed to me for eighty-five acres of land.

"Q.  Wait a minute—was there any talk or agreement about how it should be deeded, commence at the start of it?  A.  Well, he came out there and he wanted me to take the place, buy the place, and he offered the place to me at $2,200.  Well, me and my wife had a talk over it, and she says I'll go to town and see Mr. Cottey, see if I could raise the money; so I went to town and saw Mr. Cottey and he said he would try and get the money, get me the money, so that we could get $2,200 on the place, so I sent Mr. Cottey down to Mr. Tucker to see if he was satisfied to take $2,200 for the place.

"Q.  Did you have any further talk with Mr. Tucker, did he say anything further to you about—upon what considerations he would make that deed to you?  A.  No, sir, he did not."

There were many questions asked on the subject and a great deal said by the witness; but nothing to throw any more light on the question of consideration than appears in the above quotation.  The defendant said the original understanding was that the land should be deeded to him; and he used the same expres-

sion in stating the second agreement. But in testifying about either agreement the expression was not employed to convey the notion that defendant was to be the sole grantee to the exclusion of his wife. In fact, it is apparent that the reason why his wife was made a grantee was never in the witness' mind while testifying, and why she was we know not; presumably because it was agreeable to all parties. Certainly there was no evidence that it was done as the consideration for plaintiff's agreeing to take less than the original price.

It is said besides, that there was a dispute between the plaintiff and the defendant in September, 1900, as to how much was owing on the land and they agreed on $2,200 as the amount, in compromise or settlement of the dispute; that the agreement, being in the nature of a compromise, was supported by a consideration. This position must yield; not because the legal proposition is unsound, but because there was no proof of a compromise. The plaintiff's notes were long past due at the time and his demand was liquidated. There was a controversy at the trial as to how much had been paid on the notes prior to September, 1900, but there is no proof of a dispute on or prior to the latter date. On the contrary, we think the evidence is conclusive that there was no dispute. There is testimony that the note for $138 for back interest was then given, and it happens that that sum was not far from the true interest from February to October, as the plaintiff states. But the essential fact is that the defendant admitted he gave a note for delinquent interest on the two principal notes aggregating $2,980, thus confessing the amount due on the principal notes. Because a dispute occurred at the trial as to what payments had been made previously, we can not conclude there was a dispute at the date of the second agreement. In fact, if we take the defendant's testimony at the trial as to what he had paid, he actually owed about $2,900 on the notes; whereas, if we take the plaintiff's testimony, defendant owed nearly

$3,500. So, on the defendant's own testimony of what he had paid, he owed $700 more than he says the plaintiff agreed to accept in discharge of the entire indebtedness. No compromise of a disputed demand can be predicated on such facts.

Courts are prone to uphold, when possible, an agreement by which a creditor accepted less than was due in satisfaction of a demand, instead of defeating the agreement for want of a consideration; and a very slight consideration will be held sufficient. [Jaffray v. Davis, supra.] Indeed, the law is that a slight benefit to the promisor or a slight detriment to the promisee is a sufficient consideration for any contract; and if a consideration answering that requirement can be shown in the present case, it will make valid the contract in question. [Marks v. Bank, 8 Mo. 316; Lancaster v. Elliot, 55 Mo. App. 249; Columbia Incandescent Lamp Co., v. Mfg. Co., 64 Mo. App. 115.] If the plaintiff had surrendered the note for $1,480 instead of retaining it, perhaps the agreement could be sustained as an executed one. [Larkin v. Hardenbrook, 90 N. Y. 333.] He did not, and the record is barren of evidence tending to prove any consideration, even the slightest. Moreover, the court gave an instruction on the subject which made the agreement valid and binding without reference to whether the jury found there was a consideration for it or not. Our conclusion is that error was committed on this branch of the case. A finding is necessary that there was an understanding between the parties that the defendant should do something either benificial to the plaintiff or detrimental to the defendant, in consideration of the plaintiff's agreement to accept less than was due.

The error assigned in relation to the note for $460 is that the court submitted the question to the jury of whether plaintiff owned the cattle, the price of which is represented by the note; whereas, it should have construed the written contract of the parties in refer-

ence to the cattle and have held, in accordance with the effect of the contract, that Dolan was the owner. Several instructions of that tenor were requested by the plaintiff and refused, and one was given at the instance of the defendant advising the jury that if they believed the cows were purchased for the plaintiff, to be his own property, the verdict should be for the defendant on said note. The contract given in connection with the note and referring to it, looks on its face to be one of conditional sale. It is not artificially drawn in the form either of a conditional sale or of a chattel mortgage, but resembles the former. Still, courts incline to construe such agreements as chattel mortgages when it can be done. In dealing with third parties both Tucker and Dolan treated the cattle as belonging to the latter; for he mortgaged them to the bank with Tucker's consent and afterwards sold them in Kansas City. That is to say, Dolan disposed of the cattle as his own. Manifestly the written contract and the note created a security of some kind in favor of Tucker to secure payment of the note given by Dolan as purchaser of the cattle. His theory that he was taking care of the cattle for Tucker at fifty cents a head per month is wholly irreconcilable with the note and contract, which constitute the evidence of the understanding between the parties. Why would Dolan execute a note for $460 for the price of the cattle if he was to take care of them for the plaintiff for a stipulated sum per month? Why would they sign the instrument stating when his ownership should become complete and Tucker's interest cease, if Tucker hired Dolan to pasture the cows? The latter was a purchaser at either a conditional sale or an absolute one accompanied by a mortgage for the purchase-money. It is not important in the present action whether the sale was of the one kind or the other; for in either case Dolan owes a balance on the note after giving him credit for what he has paid. He says that besides turning over to Tucker the

amount obtained from the bank on the mortgage and the surplus proceeds of the sale of the cattle, he turned over the proceeds of the calves. This last item is in dispute and the fact will have to be found.

The plaintiff swore the note for $138 represented accumulated interest on the two notes given for the price of the land—the interest from February, 1900, to October of that year. He admitted he had failed to credit the principal notes with the interest for which the new one was given. Perhaps he made inconsistent statements about the matter. According to Dolan's version, the note was satisfied by the agreement made in September, 1900, which was to operate as a complete satisfaction of all indebtedness then owing for the land. The note in question constituted part of that indebtedness and was discharged by said contract, if the contract was made on a valid consideration. If not thus made, Tucker is entitled to judgment on the note for $138, but should receive a corresponding deduction from the amount of the note for $1,480.

The judgment is reversed and the cause remanded. All concur.