HENRY B. SAPPINGTON, APPELLANT, v. CENTRAL MUTUAL INSURANCE ASSN., RESPONDENT.—77 S. W. (2d) 140.

Kansas City Court of Appeals. November 13, 1934.

*Randolph & Randolph, Nile G. Vermillion* and *J. B. Gallagher* for appellant.

*Embry & Embry* and *Irwin & Bushman* for respondent.

REYNOLDS, C.—This suit was instituted in the Circuit Court of Moniteau County and is a suit by plaintiff upon an insurance certificate issued by defendant upon the life of Elizabeth A. Sappington, wife of the plaintiff, dated December 3, 1925, in the sum of $1000, in which the plaintiff was made beneficiary. The plaintiff seeks to recover judgment for the sum of $500, an alleged balance due under said certificate.

The petition is in the usual form and sufficiently sets forth a cause of action for said balance and prays judgment therefor with interest.

The defendant, answering, admitted its corporate organization and that it was engaged in writing insurance on the assessment plan in Missouri; admitted the issuance of the certificate sued upon, the death of the insured on August 2, 1932, the named beneficiary in said certificate to be the plaintiff; and denied each and every other allegation of the petition. It tendered two affirmative defenses: (1) that the certificate was secured by misrepresentation and fraud

and was, on account thereof, null and void from the beginning; (2) that the defendant had compromised the claim sued upon, by the payment of the sum of $500 thereon as an accord and satisfaction of said claim and that, by reason thereof, the plaintiff is not entitled to recover.

To the defendant's answer, plaintiff filed a reply denying all allegations of new matter therein and attacked the accord and satisfaction, compromise and release, set up in the answer, as void because it was not based upon a *bona fide* dispute existing between plaintiff and defendant with respect to the cause of the insured's death and was not supported by a sufficient consideration.

On the trial, the plaintiff introduced the certificate sued upon and introduced the evidence of two witnesses, one of whom was the plaintiff himself and the other of whom was Dr. Latham, who attended the insured at the time of her death as her physician. `

It appears, from the record, that the certificate sued upon was issued upon a written application therefor signed by the insured, dated November 22, 1925. Such application appears in the record as defendant's Exhibit 3, being introduced as a part of plaintiff's cross-examination, and is as follows:

"APPLICATION FOR MEMBERSHIP

112-B   CENTRAL MUTUAL INSURANCE ASSOCIATION

11-22-1925

"Having been made acquainted with the objects and purposes of your Association, and (word illegible) endorsing them, I hereby make application to become a member of the Association; and if accepted I agree to abide by the By-Laws of the Association which are now in force or which may hereafter be regularly adopted. And further agree that this application and the certificate of membership which may be issued to me, together with the By-Laws of the Association, shall be construed as a contract between me and the Association as fully and completely as though written in one instrument; and I further agree that if accepted as a member of the Association that I warrant the truth of the answers given to the following questions:

"I hereby warrant and agree that I am now of sound body, mind and health, and free from disease or injury.

"(Q.) Have you any of the following diseases?

"Kidney, no; stomach, no; liver, no; cancer, no; heart, no; female trouble, no; diabetes, no; bowel trouble, no; insanity, no; paralysis, no; tuberculosis, no; lung, no; dropsy, no; rupture, no; rheumatism, no; any other defect or ailment, no.

"If applicant answers yes to any of the above questions respecting any of the above diseases, he or she will give full history of such disease—

"The name of my family physician is Dr. Sherrell, address, 2013 . Franklin Ave., St. Louis.

"How old are you? 41 years.

"When born? March 15.

"Where born? Morgan County.

"Are you in good health? Yes.

"What is your present address? Clarksburg.

"What is your occupation? Housewife.

"When were you last sick? 4 years ago.

"Are you diseased in any way? No.

"Name of beneficiary, Henry Sappington.

"Address of beneficiary, Clarksburg.

"Relation of beneficiary, husband.

"I, ——————— Beneficiary or Beneficiaries named herein, in consideration of any benefit that I might derive therefrom, do hereby warrant any and all statements and answers to the questions made by the applicant herein to be true, and the literal truth of same shall be and is hereby made a consideration precedent to any liability of any certificate or policy which may be issued from this application blank, by the Central Mutual Insurance Association wherein I am named Beneficiary.

"HENRY B. SAPPINGTON,

"Signature of Beneficiary.

"I hereby warrant and agree that the foregoing statements and agreements and the foregoing answers and each of them to the foregoing questions are full, complete and literally true, and that the literal truth of same shall be and is hereby made a condition precedent to any liability on any certificate which may be issued to me by the Central Mutual Insurance Association, and I hereby tender said answers, warranties, statements and agreements to the Central Mutual Insurance Association as a basis for the issuance by it to me of a certificate of insurance.

"ELIZABETH A. SAPPINGTON,

"Applicant.

"J. I. JONES, Agent.

"To Eliminate a Credit System and Additional Expense the Fee of $5.00 Must Accompany the Application."

It appears that one Jones, an agent of the defendant, took and filled out said application, calling on plaintiff and his wife in their home for that purpose. It was testified by plaintiff, that he, the agent, asked the insured just three questions,—her name and age and the name of the beneficiary—; that he did not ask her any questions about her health; that he told the insured that no physical examination was necessary and that the defendant would accept anyone under the age of fifty years. Plaintiff testified that the agent filled out the application blank in every detail and asked

the insured and plaintiff to sign it, which they did without reading it, and that it was signed by both himself and the insured without having been read to either of them. The application being exhibited to the witness, he was asked in whose handwriting the signature Elizabeth A. Sappington appeared; and he answered, ''My wife's;'' and to the question, ''Whose handwriting is 'Henry B. Sappington' in?'' he answered, ''Mine.'' In answer to the question, ''Whose handwriting is all of the rest of the writing on here?'' he answered, ''The agent's; J. I. Jones I think it is.'' In answer to the question, ''Did your wife make the statement to him that she did not have kidney trouble?'' he answered, ''He didn't ask any questions at all about the condition of her health.'' To the question, ''The answers that are shown to the various questions at the top of the four columns—did she make any of those answers in that way?'' he answered, ''None at all; the agent made them all himself.''

The witness also testified that, at the time the application was made, the insured's health was considered good—in substance, that she was doing the general housework, such as cooking, sewing for the children, washing, taking care of the milk, churning, and taking care of the chickens—; that the family was comprised of seven (himself, his wife, and five children); that she continued in such state of health until sometime after she took out the certificate, until about June, 1927.

The evidence further tended to show that, in 1921 and 1922, the insured had suffered from a floating kidney, which thereafter became imbedded in fat and caused no more trouble. In 1927, she was operated on for gall stones. In February, 1932, she was treated by Dr. Latham for trouble caused by the friction of wearing a support for too long a time. In July, 1932, Dr. Latham treated the insured for ptomaine or food poisoning. He caused her to be taken to a hospital where he treated her until she died, August 2, 1932. The poisoning developed into colitis and diarrhea, which caused her death. She could not control her bowels.

About August 5, 1932, soon after the death of the insured, plaintiff, by letter, notified the defendant of the death of the insured. Defendant, by letter, acknowledged the receipt of the notice and advised plaintiff that his claim would be handled in the regular manner. Later, at the request of the defendant, plaintiff called upon the defendant at its office in Jefferson City, Missouri, with reference to his claim under the certificate. On this occasion, he was informed by Dr. Dallas, representing the defendant, that defendant had a letter indicating that the insured had misrepresented the condition of her health at the time the certificate was issued. It was explained to Dr. Dallas by plaintiff that the agent who took the application had made no inquiry about her health and that the

only previous trouble she had suffered was from a floating kidney which had become imbedded in fat and caused no more trouble.

Later, about September 16, 1932, plaintiff again visited defendant's office at the request of defendant. While he was there upon this occasion, Dr. Dallas stated to plaintiff, "—we decided to reject your claim—," but later said to him, "—now, being as your wife carried this policy seven years we decided to give you five hundred dollars," which offer plaintiff, at the time, declined and returned to his home.

Later, September 19, 1932, he wrote defendant stating that he had decided to accept the offer of $500.

On September 20, 1932, a representative of the defendant called upon plaintiff at his home with a check for $500, which he delivered to plaintiff and which plaintiff accepted; and plaintiff signed a receipt and release therefor. The release was introduced in evidence as part of plaintiff's cross-examination and is as follows:

"RECEIPT AND RELEASE

"Receipt of the sun of Five Hundred Dollars of and from Central Mutual Insurance Association of Jefferson City, Missouri, is hereby acknowledged, which sum is accepted in full settlement of all claims, rights and demands arising under and on account of Certificate Membership No. 112, issued to Elizabeth A. Sappington, which certificate is hereby surrendered to the Association for cancellation.

"It is further acknowledged that a bona fide dispute has arisen between the Beneficiary and the Association concerning the representations of the insured as to the condition of her health at the time of the making of application; and in order to compromise and settle dispute and the differences existing and as an accord and satisfaction the sum aforesaid is paid by the Association and accepted by the Beneficiary in full settlement.

"Dated this 20th day of Sept. 1932.

"HENRY B. SAPPINGTON,

"Beneficiary.

"Witness: HAROLD W. LAW."

It would appear that, on one or both of the occasions upon which the plaintiff visited the defendant at its offices in Jefferson City, there was more or less extended conversation in which defendant's representatives insisted that the insured was not in good health at the time she took the certificate and prior thereto and that she had misrepresented the condition of her health in the application therefor at such time. There does not appear, however, that there was any complaint made by them at that time to the effect that the insured was suffering from the colitis and diarrhea from which she died.

It appears that, during the negotiations for the settlement, considerable discussion was had over information claimed to have been given defendant by Dr. Miller, a former family physician of plain-

tiff, concerning the health and physical condition of the insured about 1921 and 1922 and concerning fainting spells which she had about that time and acute and severe pains in the upper abdomen, concerning which she complained. The operation which plaintiff's wife underwent for gall stones, at the Van Ravensway Hospital at Boonville, was also brought up and discussed, together with information furnished defendant by Dr. Van Ravensway concerning her physical condition and the condition of her health at and for several years prior to that time. The history of her condition as given to Dr. Van Ravensway by insured at the time of her operation in October, 1927, in which she stated that she had suffered with pain in the upper abdominal region for four years prior to that time, was mentioned; and defendant contended that her death was the result of the after-effects of her operation for gall stones, that the condition of her health had been misrepresented by her, that the condition of her health at and before the certificate was issued was bad—of which facts it had only learned since her death. The plaintiff insisted that the condition of her health, at such times, was good, or supposed to be, and that the condition of her health had not been misrepresented by her. The sum and substance of the whole matter is that there was a lively dispute between plaintiff and defendant concerning such matters—whether an honest one in good faith or not is yet to be determined.

Other pertinent matters appearing in the record will be noted as occasion may require.

The trial was before a jury and the court at the April term, 1933. At the conclusion of plaintiff's evidence the trial court gave, at defendant's request, a peremptory instruction directing a verdict for the defendant. Thereupon, plaintiff took an involuntary nonsuit with leave to move to set the same aside; and judgment was rendered for the defendant. A motion to set aside the nonsuit was filed by plaintiff in due time, which motion was by the court denied at the September term, 1933. From the judgment entered, plaintiff prosecutes this appeal.

### Opinion.

■ The plaintiff upon this appeal assigns error as follows: (1) in the giving of defendant's demurrer to the evidence at the close of plaintiff's case; (2) in the giving of the peremptory instruction to find for defendant; (3) in the overruling of plaintiff's motion to set aside the involuntary nonsuit and in failing to grant a new trial.

The three assignments thus made may be disposed of as one and made to depend upon whether the court erred in granting defendant's requested instruction in the nature of a demurrer at the close of plaintiff's case directing a verdict for the defendant. It was this instruction that forced the nonsuit by plaintiff; and it follows that,

if the court was right in giving the instruction in the first instance, it was not in error in refusing to set the nonsuit aside and in refusing a new trial.

■ Whether the court below properly ruled the demurrer depends upon whether the defense of a compromise settlement and an accord and satisfaction set up in defendant's answer appears from the case as made by plaintiff.

That plaintiff had failed to tender back the sum of $500 received by him upon the alleged settlement did not justify the demurrer. Under the circumstances shown by the record, he was not required to tender it back in order to maintain this suit. [Goodson v. National Masonic Acc. Association, 91 Mo. App. 339.] In order that the defendant's defense pleaded be made to appear in plaintiff's case as made, it must appear therefrom that, after the death of the insured, under the certificate sued upon, a dispute in good faith arose between the plaintiff and the defendant as to the right of the plaintiff to demand and receive payment of the defendant of the liquidated sum of $1000 provided by the terms of the certificate to be paid and as to the liability of the defendant for such payment and its right to deny liability therefor and to refuse payment; that said dispute was a real issue between them, arising over matters material to the rights of both plaintiff and defendant in such regard, upon which the rights of each depended and concerning which each in good faith considered his rights doubtful; that such dispute was compromised and settled between the parties by an agreement between them that defendant should pay to plaintiff the sum of $500 in full settlement and discharge of plaintiff's claim and that plaintiff should accept such sum in full settlement and release of his claim; that, in pursuance of such agreement, such sum was so paid to plaintiff by defendant and so accepted by the plaintiff.

■ It is insisted by defendant that the compromise of a disputed claim is a sufficient consideration in and of itself for an accord and satisfaction thereof. As said by Judge TRIMBLE in the case of Harms v. Fidelity & Casualty Company of New York, 172 Mo. App. 241, l. c. 249, 157 S. W. 1046, with regard to the same or a similar contention there made, ''This is without doubt true where the amount due is unliquidated and there is a controversy in good faith over the matter. And there may be cases in which the amount in controversy was liquidated where a compromise would be a sufficient consideration if liability depended upon facts the existence of which were in doubt and there was a controversy in good faith over them. But where the demand is fixed or liquidated the acceptance of a sum less than the whole, although expressly stated to be in discharge of the entire sum, will not discharge the debt since there is no consideration. [Winter v. K. C. Cable Company, 160 Mo. 159, l. c. 182; Goodson v. National Assn., 91 Mo. App. 351; 1 Sutherland on Dam-

ages (3 Ed.), sec. 248; Tucker v. Dolan, 109 Mo. App. 442, 1. c. 452; Biddlecom v. General Accident Corporation, 152 S. W. 103.] It is claimed, however, in this case (referring to the case under review before him) that the claim was disputed, and that, because of such dispute, a compromise thereof is good and must be upheld since compromises are favored in law. Ordinarily, this is true, but the claim must be a real one and the parties must regard their rights concerning it as in fact or law doubtful, and the compromise must be made bona fide. The mere statement in the release that the amount due is in dispute is not enough to show a consideration for the release; the controversy must be real and the issue respecting it be considered by the parties as doubtful. [1 Sutherland on Damages (3 Ed.), sec. 251.] There must be an honest difference between the parties, a dispute in good faith. [Chamberlain v. Smith, 110 Mo. App. 657 l. c. 660; Biddlecom v. General Accident Assur. Corporation, 152 S. W. 103, 1. c. 106.]''

The law, as thus stated by Judge TRIMBLE and applied to the case of Harms v. Fidelity & Casualty Company of New York, supra, seems to be the well settled law of the State and, as stated, applies to and controls the disposition of the instant case.

■ It will be noted that the defendant, in its answer, as a basis for its defense of compromise and release and of accord and satisfaction, contends (a) that the certificate in suit was issued upon a written application therefor of the insured, Elizabeth A. Sappington, in which application there were propounded to her certain questions which she therein answered and warranted the truth of, among which were the following: ''Have you any of the following diseases? . . . stomach, no; . . . bowel trouble, no; . . . any other defect or ailment, no;'' (b) that it was stated in said application by the said Elizabeth A. Sappington and warranted by her to be true that she was, at the time of the making thereof, of sound body, mind, and health and was free from disease or injury and that she had been last sick four years prior thereto; (c) that it was stated by said Elizabeth A. Sappington in said application, as a condition precedent to the issuance of the certificate of insurance by the defendant and as an inducement to defendant to issue said certificate, that the application so made by her, together with the certificate of membership to be issued thereon, together with the by-laws of the association, should be considered as a contract between her and the defendant association as fully and completely as though written in one instrument; (d) that defendant—relying solely upon the statements contained in said application and believing them to be true as warranted by the said Elizabeth A. Sappington and accepting the truth thereof as a condition precedent to the issuance of said certificate and fully believing that said Elizabeth A. Sappington was of sound body, mind, and health, free from disease and injury

and free from diseases of the stomach and liver and from bowel trouble, and that she had not been sick for four years preceding the making of said application—issued to her the certificate of membership sued upon.

The answer proceeds to negative the truth of all such statements and matters alleged in said application and to allege that they were false and untrue and that said Elizabeth A. Sappington had suffered serious ailment and had consulted a physician prior to the making of said application and, at the time and for several years prior thereto, had been afflicted with chronic hepatitis (a disease of the liver) and nephroptosis with Dietl's crisis (a disease of the kidney) and was therefore not in sound body, mind, and health and free from disease and injury, all of which was fraudulently concealed from the defendant, and that, by reason of said false statements and warranties which were made and contained in said application, the certificate issued to the deceased thereon (now in suit) was null and void from the beginning, so that the defendant never became indebted to plaintiff in any sum whatever.

■ It is further alleged in defendant's answer that, after the death of said insured—the defendant having discovered that she was not of sound body, health, and mind and free from disease at the time her application was made and at the time of the issuance of its certificate, but that she was suffering from disease of the liver and of the kidney and, for a number of years prior to the date of the application, suffering with severe pains in the abdominal regions causing dizziness, nausea, blind spells, and fainting spells, for which she was under the care of a physician—thereupon a controversy arose between it and plaintiff as to whether said insured was in good health and free from disease of the liver and kidneys or other diseases at the time of her application and as to whether or not defendant was indebted to plaintiff as beneficiary under such certificate in any sum whatever; and it was further alleged that defendant, after the death of the insured—having acquired information prior to said controversy concerning her ill health at and prior to the time of the application and her illness in 1922 from a diseased liver and kidney and concerning an operation upon her at the Van Ravensway Hospital where she had stated, in giving the history of her ailment, that she had had pain in the upper abdominal region for the four years past, that a prior examination showed her to have had a floating kidney, and that, for a number of years, she had had fainting spells—believed in good faith, by reason of the information thus acquired concerning the health of the insured at and prior to the application, that it was not liable for anything whatever under said certificate and that the defense of a compromise settlement and an accord and satisfaction of plaintiff's claim, set up in the answer, resulted from a settlement of the dispute between it and plaintiff concerning such matters.

■ To have been a real dispute such as might have formed a foundation for the compromise, accord, and satisfaction of plaintiff's claim as set up in the answer, it is apparent, from the record, that the matter in issue concerning which the dispute arose, must have been concerning the sickness or disease contributing to or causing the death of the insured and whether or not the insured had in the application falsely misrepresented the facts with reference to the existence of such sickness or disease at the time the application was made or prior thereto.

The law is well settled in Missouri that, where misrepresentations or false statements are made by an insured in applying for insurance by which the insurer is deceived as to the existence of the matters so represented, such misrepresentations are, nevertheless, immaterial and do not render the policy void unless the matters so misrepresented at that time contribute to or cause the death of the insured. Such rule applies to domestic assessment life insurance companies. [Section 5732, R. S. 1929; Sec. 5754, R. S. 1929; Bowers v. Missouri Mut. Ass'n. (Mo.), 62 S. W. (2d) 1058; Anderson v. Missouri Ben. Ass'n, 198 Mo. App. 97, 199 S. W. 740; Hicks v. Metropolitan Life Ins. Co., 196 Mo. App. 162, l. c. 171 and 172, 190 S. W. 661.] Such rule extends to and includes statements in the nature of conditions precedent to the taking effect of the certificate and liability thereunder to the effect that, unless, at the time of the making of the application or delivery of the certificate, the applicant be in good health, the certificate shall not take effect and there shall be no liability thereunder. [Hicks v. Metropolitan Life Ins. Co., supra.]

■ It will be noticed that the defendant nowhere in its answer alleges that any of the matters claimed by it to have been misrepresented by the insured in her application, at the time it was made, contributed to or caused the death of the insured; nor is it anywhere shown in the record of the evidence and the admissions upon the trial that any of such matters contributed to or caused the death of the insured. According to the testimony of Dr. Latham, her attending physician during her last illness and at the time of her death, the cause of her death was from ptomaine poisoning or food poisoning, which developed colitis and diarrhea—she could not control her bowels. His testimony is not denied and therefore is to be taken as true. There is no claim in the evidence that the deceased was suffering from ptomaine poisoning or colitis and diarrhea, with which she died, at the time she made the application for the certificate sued upon or at any time prior thereto; nor is there any evidence that any sickness from any cause whatever with which she might have been afflicted at the time that the application was made or at any time prior thereto contributed to or caused her death or in any manner superinduced the colitis and diarrhea from which she died. Nor is there any evidence in the record that anything from which she might have been suffering or with which she was

diseased at the time the application was made or prior thereto induced the trouble from which she died or in any manner contributed to her death. It is therefore clear that, even if insured had made the misstatements contended for by the defendant and they were false and untrue, yet there is no showing made in the record that such misrepresentations complained of ever became material or became a question or an issue upon which the rights of the plaintiff and defendant depended so that a real, bona fide dispute was made to exist thereon between plaintiff and defendant as to the cause of the insured's death and as to whether plaintiff was entitled to demand and to receive the amount agreed to be paid by the terms of the certificate or as to whether there was or was not any liability upon the part of the defendant therefor.

■ Further, it nowhere appears in the record that the insured made any of the misrepresentations alleged concerning the state of her health at the time and prior to making the application or to the effect that at such time she was sound in body, mind, and health and free from disease and injury and that she had last been sick four years prior thereto or that she had never had any disease of the stomach, bowel trouble, or other defect or ailment as charged in the answer.

The alleged questions asked and answers thereto, in the alleged application, now claimed to be false and to have been misrepresented by the insured, do not appear in or endorsed upon the certificate but appear solely on the application. The plaintiff, who signed the application as well as the insured, testified, upon the trial, that said application was wholly made out, in every detail, by defendant's soliciting agent, who took the application and made it out; that only three questions were asked insured by such agent, which questions related to her name, her age, and the name of the beneficiary; and that no questions were asked at all about the condition of her health. Upon his attention being called to the questions and answers appearing in the application, he stated that none of the answers there appearing were made by the insured but that all of the same were made by the agent himself; that the agent filled the application out and told his wife, the insured, to sign it, that everything was all right; that she thereupon signed it without reading it or having had it read to her; that likewise he, the plaintiff, signed it with her without reading it or having it read. Upon the trial, the plaintiff produced the certificate sued upon and introduced it in evidence. No copy of the application appears thereon or was introduced by him in connection therewith. The application was produced and introduced in evidence by the defendant, as a part of plaintiff's cross-examination. Neither it nor a copy thereof is shown in the record ever to have been delivered to or in the custody of the plaintiff or the insured. The testimony of the plaintiff as to the

manner in which said application was thus made up and by whom and the circumstances under which it was signed is not denied in the record and, for the purposes of a demurrer, is therefore to be taken as true. ·

■ The statements contained in said application, except as to the name and the age of the insured and the name of the beneficiary therein, while nominally only those of the insured, must be taken, in fact, as statements of the defendant itself and cannot, under. the circumstances, be held to be the statements of the plaintiff or of the insured. [Thomas v. Hartford Fire Ins. Co., 20 Mo. App. 150.] The knowledge of the agent with respect to the application and the questions and answers appearing and made thereon, as to whether such questions were in fact asked and such answers were in fact made by the insured or as to the truthfulness or untruthfulness thereof, is imputed to the defendant and becomes the knowledge of the defendant; and it may not be heard to say, after the death of the insured and after having collected the assessments thereon for years, that it issued the certificate in reliance upon the fact that the insured made such answers and in reliance upon their truthfulness, it having at all times known that such was not the fact. There was no evidence of collusion between the agent and the insured or between the agent and the plaintiff. [Coleman v. Central Mutual Ins. Ass'n (Mo. App), 52 S. W. (2d) 22; Kribs v. United Order of Forresters, 191 Mo. App. 524, 177 S. W. 766; Rissler v. American Central Ins. Co. of St. Louis, 150 Mo. 366, 51 S. W. 755; Shell v. German Ins. Co. of Freeport, 60 Mo. App. 644; Breckinridge v. American Central Ins. Co., 87 Mo. 62, 1. c. 71; Thomas v. Hartford Fire Ins. Co., supra.]

■ · It is true that, if there had been evidence in the record showing that the insured misrepresented the condition of her health at the time the application was made and prior thereto in the manner and particulars alleged by defendant and that she was not and had not been in good health at such time but had been and was at the time of the application and prior thereto of unsound health and afflicted with the sicknesses or diseases alleged by defendant and that any of them caused or contributed to her death, then the condition of her health at the time the application was made and prior thereto and whether she was afflicted with the sicknesses or diseases mentioned or any of them, at such time, that caused or contributed to her death, would have been material to the rights of plaintiff and defendant, of the right of one to demand payment of the sum provided to be paid by the terms of the certificate and the right of the other to refuse payment thereof, had the answer further tendered the issue that her death had been caused or contributed to by any of such matters so misrepresented. But no such state of facts appears from the record in plaintiff's case, and no such issue as that referred to appears tendered in the answer.

■ Under the record in this cause, the controversy and dispute alleged in the answer was over wholly immaterial matters as to the cause of the insured's death upon which the rights of the parties depended, and therefore was unavailing as a basis for the compromise settlement and the accord and satisfaction set up in the answer as a defense.

■ The plaintiff is not precluded by the written release executed by him, found in the record of his case. The mere recital therein that a bona fide dispute had arisen between himself and defendant, based upon insured's representations as to the condition of her health at the time of the making of the application, is not sufficient. The facts which make it a bona fide dispute must appear from the record. Whether it was a bona fide dispute or not becomes a question of fact upon the evidence and not of mere opinion. The facts in dispute which make it bona fide must appear; and also it must appear that the party having a contention upon any fact or facts shown must have had, at the time, reasonable grounds for believing in the existence of each fact or facts. The statement in the release that such dispute was based upon representations of the insured as to the condition of her health at the time of the making of the application carries its own seeds of destruction. No such representations are shown in the record of the plaintiff's case. There therefore was, in legal effect, no dispute upon any matter shown by the record to have been material. The release is overloaded and falls of its own weight. It is valueless, on its face, when the record is looked to; and its validity is attacked in a direct manner by plaintiff in his reply.

■ The case of Zinke v. Knights of the Maccabees of the World, 275 Mo. 660, 205 S. W. 1, is wholly unlike the case at bar. The facts therein upon which the dispute arose appeared in the record upon the trial. Such facts concerned the manner in which the insured came to his death, whether by suicide or otherwise, and whether defendant had reasonable grounds for contending that he came to his death by suicide. The policy therein provided for the payment, upon the death of the insured, of a benefit of $1000 to his wife. It further provided that, in event of the death of the insured by suicide, no benefit should be paid but the beneficiary should receive an amount equal to twice the amount contributed to the ''Life Benefit Fund'' by the insured. Twice the amount so contributed by Zinke, the insured, was $578.40. The record shows that Zinke died March 31, 1913, and that the plaintiff in that case, his widow, submitted proofs of death consisting of her own affidavit, the affidavit of an attending physician, the verdict of the coroner's jury, affidavits taken at the inquest, together with sworn statements of the officers of the local lodge to which insured belonged, in each of which said papers so submitted the cause of the insured's death was

given as suicide. The defendant in that case, upon the receipt of such proofs, issued and delivered to the plaintiff therein, the beneficiary under the policy, its check in the sum of $578.40 as its liability under the policy for suicide claims. Such beneficiary, upon the acceptance of said check, executed her receipt to the defendant wherein she acknowledged such check to have been for the full amount for which defendant was liable under its laws governing suicide claims. Subsequently, the beneficiary asserted that she was entitled to an additional $400 upon the theory that the insured was not a suicide and that she was entitled to full benefit under the policy in the sum of $1000; and she made demand therefor. The defendant refused payment, advising her that it had paid her the amount due under said policy—her claim being a suicide claim—and that it owed her nothing more. Thereupon, plaintiff in said cause gave notice that she denied the insured was a suicide and that her original statement that he was a suicide was the result of mistake, and brought suit seeking recovery of the alleged balance due her. It was held that, the plaintiff having accepted the sum of $578.40 in payment of her claim as a suicide claim and in discharge of liability of defendant upon such claim under the policy, the defendant was not otherwise liable to her under the policy as and for a benefit; that such payment, under the facts in the record, amounted to an accord and satisfaction of all claims that might have arisen under the policy; that, under the facts and circumstances shown in the record, there was a substantial doubt as to amount due the beneficiary, sufficient to support the compromise or settlement upon the dispute arising concerning the same. The matters over which the dispute arose were matters shown to have been material to the rights of both plaintiff and defendant. No such showing is made here. The case is therefore not in point as authority for defendant's contention in the instant case.

In the case of Painter v. Prudential Insurance Company of America (Mo. App.), 71 S. W. (2d) 483, the dispute, as in this case, arose over alleged representations made by the insured in her application as to the condition of her health at and prior to the time of such application and the issuance of the policy, in which application she stated that, at such time, her health was good and that no physical defects or infirmities existed and that she had never suffered from heart disease, ulcers, or dyspepsia. The defendant claimed to have gathered information, subsequent to insured's death, to the effect that, notwithstanding her statements, she was, at the time of making her application, not in good health but, at such time and prior thereto, was suffering with heart disease, which afterwards caused her death. Proof of insured's statements complained of was made upon the trial; and also proof was made that such statements were false and that the condition of her health was not as represented

by her at the time of the application but that, upon the other hand, at such time and prior thereto, she had been suffering from heart disease and that her death was contributed to and caused by such heart disease. It thus appears, in that case, that the dispute was with reference to matters shown to be material to the rights of the parties and that, at the time the controversy arose, defendant was in possession of sufficient evidence of insured's ill-health from heart disease at the time she made the application (from which heart disease she afterwards died) to justify a dispute of plaintiff's claim and to deny liability thereon. Such is not made to appear in the case at bar. In other words, facts were shown in that case from which it could be found that the dispute was bona fide, over matters material to the rights of both plaintiff and defendant and upon which the rights of both parties depended. Such cannot be said to be true in the instant case. The case of Painter v. Prudential Insurance Company of America cannot therefore be held authority for defendant's contention.

■ Where the burden of proof lies to make out the defense of an accord and satisfaction is immaterial here. The only question is, "Did such defense appear made out in plaintiff's case?"

■ For the reasons hereinbefore stated, we are constrained to hold that the demurrer by the court below was wrongly ruled; that it was error to have given defendant's requested instruction directing a verdict in its behalf; and that the court likewise erred in refusing plaintiff's motion to set aside the nonsuit taken and in refusing to grant a new trial. The motion should have been sustained, and a new trial granted. The judgment below is accordingly reversed, and the cause is remanded for a new trial. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded for new trial. All concur.