W. R. HALLOWAY, E. BOEGER and W. B. ROGERS, TRUSTEES OF THE STRAFFORD DAIRY ASSOCIATION, v. MOUNTAIN GROVE CREAMERY COMPANY, Appellant.

Division One, March 5, 1921.

1. **CONTRACT**: Unilateral: Termination. A contract whereby one party agrees to receive during a fixed period from another property delivered from time to time and pay therefor certain prices, but by which such other party does not agree to deliver any particular quantity of such property, is unilateral and may be terminated by either party at any time by notice thereof to the other party.

2. ———: ———: ———: Revivor. Where a unilateral contract has been terminated by one party, who notifies the other that he will thereafter buy from him the property mentioned in the contract at prices named from time to time in such notices, the continued delivery of such property by the other party does not revive such contract, even though he continues to insist that such deliveries are made under the original contract.

3. ———: **Alteration: Accepting Benefit.** One who accepts the benefit of a radical alteration in an original contract made by the other party to it, accepts the whole alteration and is bound thereby, whether the original contract was binding or merely unilateral.

4. ———: **Payment in Full: Acceptance: Protest.** He who with full knowledge accepts a payment made by one party as in full of a claim about which there is a bona-fide dispute between the parties, is bound thereby, as an accord and satisfaction, even though he protests at the time that more was due.

Transferred from the Springfield Court of Appeals.

REVERSED.

*V. O. Coltrane* for appellants.

'(1) The contract sued upon is unilateral and void for want of mutuality so far as it was executory. The Strafford Dairy Association was not obligated to furnish any certain or definite amount of cream. In fact, they do not agree to do anything. Campbell v. Handle Co., 117 Mo. App. 19; Hudson v. Browning, 264 Mo. 58; Iron & Rail Co. v. Railroad, 148 Mo. App. 173; Jones v. Durgin, 16 Mo. App. 370. (2) Plaintiffs cannot recover in this action for the contract price, even upon the theory that the writing constituted a valid contract between the parties. Assuming the existence of such contract defendant fully performed up to the time it repudiated the agreement, and as to that part of the agreement which was executory it had a legal right to repudiate it by subjecting itself to a suit for damages. Thereafter, plaintiff could not perform and recover on the contract. One party to a contract has no right to proceed to execute it after he has been notified that the other party thereto has repudiated it. His remedy is an action for damages for the breach, and his duty is to minimize the damages, not to increase them by proceeding to perform the contract. Advertising Co. v. Wilson, 186 Mo. App. 498; Catalogue Co. v. Car Co., 120 Mo. App. 575; Frederick v. Willoughby, 136 Mo. App. 244; Printing

Co. v. Cutlery Co., 143 Mo. App. 518.  (3)   After June 2, 1914, defendant did not accept cream or agree to pay for the same under the contract sued upon.  This is not only shown by all of the evidence but plaintiffs' petition alleges that defendant "continued during the remainder of the term and life of said contract to repudiate the same."  Plaintiffs are therefore estopped from claiming that defendant accepted this cream under this agreement.  On the other hand, the evidence of plaintiffs as well as that of defendant shows that the defendant made a new proposition, namely, to submit prices from time to time that it was willing to pay, and also in addition to such prices to pay two cents commission.  Prices were submitted by defendant to plaintiffs from time to time, the cream was shipped to plaintiffs, they knowing at the time that defendant was not intending to purchase under the contract sued on, defendant on each shipment paid for the cream upon the basis of these card prices, and plaintiffs accepted the money, knowing that defendant was intending by such payment to pay the full amount due.  In addition to this plaintiffs accepted an entirely new term and benefit in defendant's second proposition, namely, the two cents commission per pound of butter fat.  The controlling fact is not in dispute that they knowingly and deliberately accepted benefits accruing by reason of defendant paying the two cents commission.  (a)    One who accepts a benefit under an agreement "must adopt the whole of it, conforming with all of its provisions and renouncing every right inconsistent with them."  Fox v. Windes, 127 Mo. 502; Beaver v. Bank, 177 Mo. App. 105; Sage v. Finney, 156 Mo. App. 30; Wood v. Trust Co., 265 Mo. 525.  (b)   Plaintiffs should not be allowed to accept the benefits and repudiate the burdens.  Dry Goods Co. v. Bank, 81 Mo. App. 46; Willow Springs C. Co. v. Mountain Grove C. Co., 197 S. W. 916; Hamill v. Talbott, 81 Mo. App. 210.  (4)   Where parties have entered into a contract, even a written one, and afterwards a new

or modified contract is made, the old contract is thereby abrogated and abandoned. The substitution of the new contract for the old one is a sufficient consideration. Carman v. Harrah, 182 Mo. App. 365; Garnhart v. Finney, 40 Mo. 463. (5) Plaintiffs of their own accord accept- ed the second proposition made to them by defendant and have taken the advantages which resulted to them by acting under the second proposition, having received the compensation which was to be paid under its terms. Having done this they are estopped from denying the validity of the substituted agreement, nor does the fact that in making this second contract the plaintiffs pro- tested that they had rights under the first and that they were going to hold defendant to the first agreement, better their position. A party cannot avoid the legal con- sequences of his acts by protesting at the time he does them that he does not intend to subject himself to such consequences. United States v. Lamont, 155 U. S. 303, 39 Law Ed. 160; Cotton-Oil Co. v. Ashburn, 81 Fed. 331; Torry v. Hardy, 196 S. W. 1102. (6) Defendant had an absolute legal right to repudiate the contract. The undisputed evidence is that defendant did repudiate the contract and continued to refuse to recognize it. (a) We have the contract sued upon entirely abrogated and the defendant making a new proposition to the plaintiffs. The offer was that if plaintiffs would send their cream to defendant, defendant would pay therefor the same prices that it was paying at other stations, plus two cents commission. Plaintiff association accepted this offer by sending the cream in response to defendant's proposal and accepting the money that was tendered in payment therefor, and also accepted two cents per pound com- mission, an entirely new term in the agreement, and is holding, and not willing to give up, the benefits derived by reason of defendant's paying this commission. Lees- ley Bros. v. Fruit Co., 162 Mo. App. 195; Lungstrom v. German Ins. Co., 48 Mo. 204; Allen v. Chouteau, 102 Mo. 323. (b) There is no conflict in the testimony

as to these overt acts of acceptance or asquiescence, no countervailing evidence and no impeachment of any witness. The facts stand admitted. Their legal effect alone remains, and that is a question for the court to decide and not for the jury. May v. Crawford, 150 Mo. 527. (c) Where the testimony given in behalf of plaintiff establishes the truth of the facts set up as new matter in the answer, and these facts are sufficient to preclude a recovery upon the part of plaintiff, it becomes the duty of the trial court, as a matter of law, to direct a verdict in favor of defendant. Torrey v. Hardy, 196 S. W. 1100. (7) The instructions given by the court are incorrect. School Board v. Hull, 72 Mo. App. 403: Lightfoot v. Hurd Co., 113 Mo. App. 612; Adams v. Helm, 55 Mo. 468; Coal Co. v. St. Louis, 145 Mo. 651.

*L. L. Collins* and *Hamlin & Hamlin* for respondent.

(1) Without conceding the contract at bar is unilateral, and whether it is or is not, does not enter into this case, because this contract was fully carried out by the respondent. Even should it be conceded that this is a unilateral contract, it does not follow at all that respondent after fully executing the same on its part should not recover, but on the contrary, after having executed it, it can recover. Typewriter Co. v. Realty Co., 220 Mo. 522; 6 R. C. L. p. 687, sec. 94. (2) Whether this contract be unilateral or not the conclusion is that a nude unilateral agreement, supported by a valid consideration because the promisee has performed, is enforceable, and for its breach the promisor must respond in damages. Williams v. Tiedemann, 6 Mo. App. 274. (3) Respondent delivered the goods, giving appellant to fully understand and know that respondent was expecting of it the price theretofore agreed upon and under these circumstances appellant received and accepted the commodity delivered to it. And the very act of appellant in receiving this butter fat knowing at the time that respondent expected the Elgin price therefor, and know-

ing at the time that respondent had refused to accept from it any sum less than the Elgin price, made itself liable to respondent for the Elgin price. Dove v. Fansler, 132 Mo. App. 669; Bahrenburg v. Fruit Co., 128 Mo. App. 526. (4) It cannot be disputed that had respondent received for its butter fat the price fixed in the written contract, then it would have received the amount sued for in addition to what it did actually receive, and not having received the amount sued for, it was entitled to a verdict for that amount, unless the amount it did receive was received in full for the butter fat sold and delivered by it to appellant, and this was a question for the jury. Bahrenburg v. Fruit Company, 128 Mo. App. 526; Perkins v. Headley, 49 Mo. App. 562; Dry Goods Co. v. Goss, 65 Mo. App. 55; Mfg. Co. v. Heinz, 120 Mo. App. 477. (5) Respondent by receiving checks from appellant from time to time, is not estopped to maintain this suit. No accord and satisfaction was created thereby. A creditor does not, by voluntarily accepting a part of what is due him, release the remainder. Perkins v. Headley, 49 Mo. App. 562.

SMALL, C.—Appeal from the Circuit Court of Greene County.

The plaintiffs are trustees of a voluntary association of dairymen, and the defendant is a corporation engaged in buying cream. The following agreement was executed by the parties:

"Mountain Grove, Missouri, Mar. 7, 1914.
"CONTRACT.

"Ozark Dairy Association,
    "Strafford, Missouri,
    "Gentlemen:

"We agree to pay the following price for your cream for one year, beginning the 1st day of April, 1914, and ending the 1st day of April, 1915. We will pay flat Elgin price F. O. B. Strafford for the entire year for all first grade cream and three cents less for second grade cream.

"Second grade cream is cream testing below 25 per cent individually or testing below 30 per cent on composite test. Also

all foamy, old cheesey and dirty cream with bad odor is to be classed as second grade cream.

"All prices to be based on Elgin market, unless the Elgin board should be dissolved, in which case the price to be based on some other market mutually agreed upon by both parties. All payments to be based on your weights and tests. The shortage if over 1 per cent may be deducted by us, when so proved short by our representative at your station on any regular receiving day.

"We further agree to furnish acid, cans for shipping and report sheets, and agree to pay for all cream as soon as possible after receiving report, and also agree to pay three cents per can drayage. All cream is to be bought on Tuesdays and Fridays as far as possible. We further agree if we contract with the organization at any other point, at a higher price we will pay you the same.

"MOUNTAIN GROVE CREAMERY CO.,

"Per H. W. Jensen, Pres.

"STRAFFORD DAIRY ASSOCIATION,
    "By E. BOEGER,
    "By W. R. HALLOWAY,
    "By W. B. ROGERS."

The petition, after pleading this agreement, alleged "that in accordance with said contract entered into as aforesaid with the defendant the plaintiffs delivered to defendant a great amount of cream or butter fat, on different dates between the first day of April, 1914, and the first day of June, 1914, and the said defendant received said cream and paid for it in accordance with said contract, to-wit: the prices fixed and paid for like cream at Elgin, Illinois, up to said date; that on June 2, 1914, and long prior to the time for expiration of said contract the defendant repudiated said contract and refused to pay plaintiffs the prices for their cream as by said contract provided and failed and refused to comply with the terms of said contract by paying plaintiffs for their cream the market price for such cream as fixed by the market at Elgin, Illinois, and continued during the remainder of the term and life of said contract to repudiate the same and refused to pay as in said contract provided, but continued to receive and accept during the

life of said contract plaintiffs' cream or butter fat, but paid plaintiffs on the same, prices therefor greatly less than the price for such cream fixed by the Elgin market, and paid plaintiffs prices fixed by defendant and not by the Elgin market, and which prices so paid plaintiffs were greatly inferior to the prices agreed upon and specified in said contract and fixed by the Elgin market; that plaintiffs refused to abandon the terms of their said written contract with defendant but fully carried out and fulfilled all their part of said contract and upon the date aforesaid, to-wit: June 2, 1914, or shortly there-. after plaintiffs notified defendant that they would continue during the life and term of said contract to furnish the cream as they by said contract had agreed to do and would expect and demand of defendant to fully comply with its part of said contract, but plaintiffs charge and aver that the defendant has wholly failed to comply with and carry out its part of said contract in this, to-wit: by failing to pay plaintiffs at Strafford, Greene County, Missouri, for their cream or butter fat so sold and delivered by them to defendant, the prices for such butter fat as specified in said contract and fixed by the Elgin market; that between the date of June 2, 1914, aforesaid and April 1, 1915, the date of expiration of said contract plaintiffs sold and delivered to defendant 24,-967.6 pounds of butter fat; that the prices paid plaintiffs by defendant therefor was one thousand six hundred forty-three dollars and eleven cents less than plaintiffs should have been paid under the terms of said contract, and the prices fixed by said Elgin market; . . .

for which sum, with interest plaintiffs prayed judgment.''

The answer, after admitting defendant denied liability on said agreement, was as follows:

''For another and further answer defendant states that for some time prior to and until on or about May 28, 1914, it had been purchasing cream from the Strafford Dairy Association, for which association plaintiffs bring

this suit, on the basis of the Elgin, Illinois, cream or butter-fat market, and that said association was represented by one L. A. Webster in the collection and shiping of such cream, the collection of the money paid by defendant therefor, and in the correspondence connected with said business, that on or about said May 28, 1914, defendant notified said Webster and said association that this defendant would no longer purchase cream upon the basis of the Elgin market as it had been purchasing the same, but would put the Strafford Dairy Association upon the same basis as all other stations patronized by defendant, and that defendant would pay after said date for cream at Strafford the same rate that it was paying at other stations and would also pay two cents com- mission on each pound of butter fat purchased at said station; that thereafter defendant furnished said Straf- ford Dairy Association with quotations each week as to what it was paying that week for cream at other sta- tions and what it would be willing to pay at Strafford, and all cream mentioned in plaintiffs' petition was fur- nished in response to said quotations and with the knowl- edge and understanding that defendant was paying and would only pay the amounts mentioned in said quota- tions, and was accepted by defendant with the under- standing that it was furnished upon the basis of such quotations; that defendant would not have accepted said cream at a higher price than mentioned in said quotations plus said commission; that each week thereafter de- fendant upon each shipment of cream paid said associa- tion upon the basis of said quotations in full for the amount received, and further paid said association two cents commission on each pound of butter fat, and said association accepted the same.    Wherefore, defendant says that plaintiffs are not entitled to recover.''

The reply traversed the new matter in the answer.

There was no dispute as to the material facts which were, in substance, as follows:

The defendant received and paid for all the cream delivered according to the price fixed in said agreement until about June 1, 1914, when defendant notified said association that it would no longer purchase cream under said agreement, but would pay them thereafter the same price it paid others, including two cents per pound of butter fat, for the tester—the person then in plaintiffs' employ who tested the cream. The plaintiffs had theretofore themselves paid said tester one cent per pound of butter fat for his services. Upon receipt of this notice, the association promptly replied that they would not consent to any change in said original agreement, but would continue to supply defendant with cream at the price fixed therein for the time therein specified. But defendant refused to recede from its position and at stated periods sent cards to said association showing the price it would pay for cream thereafter. There was no claim, however, that said association was obligated to further supply defendant cream at any price. After receiving these cards plaintiffs continued to furnish defendant with cream and to insist that they were entitled to the price therefor fixed in said agreement of March 7, which defendant persistently denied and refused to pay, but sent the association checks for the cream it received at the prices named in such cards, including two cents per pound of butter fat for the tester, which the association regularly received and kept, except the two cents for the tester which they paid over to him in full for his services, and no longer considered him in their employ. But all the while the association demanded the price fixed in said agreement. This course of business continued—each maintaining a firm stand by his guns—until the expiration of the year mentioned in said agreement. Thereupon, this suit was brought.

Under instructions given by the court, the jury returned a verdict for the amount sued for, being the difference between the card prices received and the price in said agreement. Among other instructions, the defend-

ant requested a demurrer to the evidence, which was refused.

An appeal was duly lodged in the Springfield Court of Appeals, where the judgment of the circuit court was affirmed. On motion for re-hearing, FARRINGTON, J., asked that the case be certified to this court, because the decision was in conflict with the following cases: Lightfoot v. Hurd & Co., 113 Mo. App. 612; Adams v. Helm, 55 Mo. 468; St. Joseph School Board v. Hull; 72 Mo. App. 403. The cause was accordingly so certified. The opinions of the Court of Appeals will be found in 209 S. W. 325-331.

I. The first question is, was the said agreement of March 7, 1914, a valid contract or an unilateral agreement which was not binding on either party? On this point all the judges of the Springfield Court **Unilateral** of Appeals agreed that it was unilateral and **Contract:** **Right to** could be receded from by the defendant, ex- **Terminate.** cept in so far as it became executed, under the ruling of this court in Hudson v. Browning, 264 Mo. l. c. 65. In that case, the authorities are collected and reviewed, and it was held, that where one party agreed to buy a certain number of ties at certain prices, but the other party did not bind himself to furnish any particular number, the agreement, so far as it was executory, was not binding upon either party. It is evident the same rule must apply to the agreement between the parties here. The dairy association did not agree to furnish any particular amount of cream and could have gone out of business or refused to supply any and defendant would have been remediless. Consequently, we hold, that said agreement, not binding plaintiffs, was not binding on defendant, and defendant had a right to cease receiving cream thereunder and to so notify plaintiffs, and upon giving such notice, said agreement was at an end.

II. We also hold, that there was no evidence that said agreement was ever thereafter renewed or acted on or executed in any way by defendant. While it is true, defendant received cream thereafter, which the association tendered under said agreement, yet, defendant at all such times denied that said agreement longer existed, and before plaintiffs supplied such cream notified plaintiffs that it would not pay the agreement price therefor, but only the price shown on the cards sent the plaintiffs. There was therefore neither an express nor implied revivor of said agreement nor recognition thereof in any way by the defendant. But, it is said, that plaintiffs refused to recognize the defendant's right to withdraw from said agreement, and continued to ship cream, which defendant continued to receive, knowing that plaintiffs asserted that said agreement was still binding. But the association's mere assertion after said agreement was no longer binding that it was still binding, did not revive it nor make it binding on defendant. Plaintiffs could not *sua sponte* keep said agreement alive against defendant. Defendant did nothing, after it notified plaintiff that said agreement would no longer be adhered to, to lead plaintiffs to believe it was still in existence, and that plaintiff could supply cream thereunder and would receive the price therein fixed. On the other hand, defendant continued at all times to insist that said agreement was ended and that it would only pay certain card prices of which defendant notified plaintiffs in advance from time to time before they shipped the cream. Indeed, the petition itself not only admits but distinctly alleges that defendant at all times thereafter repudiated said agreement, that is, refused to take or pay for cream thereunder. There was, therefore, no acceptance of cream under said agreement by defendant, nor execution thereof after it withdrew therefrom. The plaintiffs' case, therefore, fails because they sued for the price contained in said agreement, for which defendant was not liable.

*(Margin note: Unilateral Contract: Revivor After Termination.)*

The most that can be said is that there never was any agreement or meeting of minds as to the price to be paid after defendant notified said association of its refusal to go on with said original agreement, and if plaintiff had never been paid anything for cream subsequently delivered, it could recover the value thereof, but not any special contract price. So that, defendant's demurrer to the evidence should have been given.

III. Another feature is this—and it is the point upon which the learned appellate judge certified the case here: There was not simply a failure or refusal to pay the price fixed for cream in the agreement of March 7th, but after June 1st, a radical change in another respect was made. Thereafter, defendant paid the cream tester two cents per pound of butter fat for his services in testing the cream in addition to the card price paid the association for the cream, and included this tester's commission in the checks sent the association for the cream. The association regularly received and paid over such commission to said tester as full payment for his services and no longer considered him in their employ. Whereas, while both parties transacted business under said agreement on March 7th, the tester was paid one cent commission per pound by the association and he was considered in their employ. This, in effect, was a radical change in the original agreement, and on the undisputed facts the plaintiffs carried it out —got whatever benefit there was in it by no longer having the tester in their employ and no longer being liable to him for his services. Under such circumstances, it availed the plaintiff naught to protest and insist on the original contract. "Saying they would ne'er consent," they did consent to the change, in so far as the tester was concerned and received whatever advantage accrued to them thereby. Under such circumstances, it is well settled, that plaintiffs were bound by the whole alteration made, whether the original agreement was a binding contract or mere unilateral agreement.

*Contract: Accepting Benefit of Alteration.*

"He who accepts a benefit under an instrument must adopt the whole of it, conforming with all its provisions and renouncing every right inconsistent with them, . . . A person cannot accept and reject the same instrument, or having availed himself of it as to part, defeat its provisions in any other part, and this applies to deeds, wills and all other instruments." [Fox v. Windes, 127. Mo. 1. c. 511-12; Sage v. Finney, 156 Mo. App. 1. c. 42-3.]

V.   There was, at least, a bona-fide dispute between the parties, and plaintiffs with full knowledge that defendant was paying to them the card prices and commission to the tester in full of all its liability to them for the cream they furnished, received and kept the money. The mere fact that they protested at the time that there was more due did not prevent their acceptance of the money from operating as accord and satisfaction. "If one accepts a payment upon condition that it is to be received in full satisfaction of his claim, his entire claim is satisfied, even though he filed a written protest at the time of accepting the amount paid, notifying the debtor that he would insist on the balance claimed." [Coal Co. v. St. Louis, 145 Mo. 651; St. Joseph School Board v. Hull, 72 Mo. App. 403; Lightfoot v. Hurd & Co., 113 Mo. App. 612; Adams v. Helm, 55 Mo. 468.]

**Payment as in Full: Acceptance Under Protest.**

The result is, the judgment of the circuit court is reversed. *Brown* and *Ragland, CC.,* concur.

PER CURIAM:—The foregoing opinion of Small, C., is adopted as the opinion of the court. All of the judges concur, except *Goode, J.,* not sitting.