R. B. WAYLAND and FAY L. WAYLAND, his wife, v. W. G. PENDLETON and CHARLES W. WHITLOW, Executors of the Will of R. W. WHITLOW and J. T. GAINES, Trustee, Appellants.—85 S. W. (2d) 492.

Division One, July 9, 1935.

*W. H. Martin* and *Embry & Embry* for appellants.

*Luman Spry* for respondents.

HYDE, C.—This is an action in equity seeking to compel the executors of the estate of R. W. Whitlow, deceased, to accept $1200

.as an agreed compromise settlement in satisfaction of a deed of trust .and the $2000 note secured thereby. An injunction restraining the foreclosure of the deed of trust was also asked. The court found that the estate had become bound to accept the compromise settlement, and that the amount due thereon had been tendered into ·court, and ordered that defendants be permanently enjoined and restrained from foreclosing the trust deed. From this decree the .defendants appealed to the Kansas City Court of Appeals which .affirmed the decree. [Wayland v. Pendleton, 73 S. W. (2d) 288.] Because the decision was deemed in conflict with Scott v. Crider, 217 Mo. App. 1, 272 S. W. 1010, decided by the St. Louis Court of Appeals, the case was certified here, under the provisions of Section 6 of the Amendment of 1884 to Article 6 of the Constitution.

The controversy herein is over the question of whether or not a contract, which is binding upon the Whitlow estate, was made to compromise plaintiffs' indebtedness to the estate. Since plaintiff R. B. Wayland was the person who carried on all negotiations we will for convenience hereinafter refer to him as plaintiff. Plaintiff's indebtedness consisted of a note to Whitlow for $2000 dated June 4, 1927, due June 4, 1932, secured by trust deed on Lot 48, Block B, Smith's Addition to New Franklin, and another $2000 note to Whitlow dated May 27, 1930, due May 27, 1935, secured by trust deed on Lot 47, in the same block. Whitlow died in 1932 and by his will had appointed defendants W. G. Pendleton and Charles W. Whitlow his executors. At the time the executors took charge of the estate plaintiff was in default on interest and taxes under both trust deeds and, under the terms thereof, both were subject to foreclosure. Upon demand of Mr. Pendleton, plaintiff authorized the executors to collect rents from both properties and apply them upon the indebtedness. The rents had been collected for plaintiff by Mr. Carpenter, who was a relative of plaintiff engaged in the real estate business at New Franklin, and he continued to collect them for the executors.

The will of Mr. Whitlow provided for cash legacies to his heirs, amounting to $43,000 "to be paid to them as soon as sufficient investments, securities and other property of my estate can be conveniently controverted into money without sacrifice in the judgment of my executors." In February, 1933, in order to raise part of the money to meet these legacies, Mr. Pendleton wrote Carpenter, as follows: "If you think it worth while, you may submit to Mr. R. B. Wayland this proposition. If he can raise $3000 in settlement of his two loans, I will obtain an order from the Probate Court authorizing me to settle on these terms." Carpenter conveyed the information to plaintiff that he could settle both deeds of trust for $3000 and that the time limit on the proposition was six weeks. Nothing was done, however, until the latter part of June, 1933, when plaintiff called

upon Pendleton to find out if the proposition was still open. All parties agree that Pendleton told plaintiff he would take $3000 for the entire indebtedness if the money was raised within a reasonable length of time. Plaintiff did not then know whether he could raise $3000 but got busy at once to try to do so. Through Carpenter, plaintiff soon arranged the sale of Lot 47 for $2250, and asked Pendleton to accept $1500 from this sale to release Lot 47. Pendleton refused to do so. Plaintiff asked Carpenter to go with him to get a thorough understanding before he sold the place. There was a further conversation at Mr. Pendleton's house between plaintiff, Carpenter and Pendleton. All three agree that Pendleton refused to accept $1500 to release Lot 47, but made the proposition that he would release Lot 47 upon payment of $1800 and would also release Lot 48 if $1200 was paid by August 1st. All three parties to this conversation also agree that plaintiff did not accept this proposition and said so very emphatically. The only thing they disagreed upon was whether plaintiff told Pendleton "I will see you in Hell before I will do it," or whether he said "I will see those houses in Hell before I would do that." Whichever it was, plaintiff says that Pendleton said "Do as you like Mr. Wayland," got up, and walked in the house, and left plaintiff and Carpenter standing on the porch. Details of this conversation are more fully set out in the opinion of the Kansas City Court of Appeals, 73 S. W. (2d) 288, l. c. 289 to 291. We can certainly construe neither version as an acceptance of Mr. Pendleton's offer.

However, although there was no further meeting of the parties, by the 3rd of July plaintiff did raise $3000 and place it with Carpenter. It is clear that plaintiff expected Carpenter to be able to obtain the release of both trust deeds for it. Plaintiff got this money from the proceeds of the sale of Lot 47, and from a loan of $1000 which his sister obtained by giving a deed of trust on Lot 48 (which he conveyed to her) to the Exchange Bank of New Franklin. Thereafter, Carpenter attempted to get Pendleton to take this money in settlement of both deeds of trust but he refused to do so. Pendleton finally did accept $1800 in satisfaction of the trust deed on Lot 47 so that the sale thereof could be completed, but with the understanding that it had no reference to the other trust deed and that he was not going to accept $1200 to release it. Thereafter, this suit was commenced to prevent foreclosure of the trust deed upon Lot 48. It was shown that the deed from plaintiff to his sister was never recorded; that Carpenter paid back the remaining $1200 to plaintiff; that the $1000 borrowed by his sister from the bank was repaid; and that the trust deed securing the same was released. The purpose of this suit was to require the executors to accept $1200 in full settlement of the indebtedness secured by the trust deed on Lot 48.

194

There is no such contract in this case, which can be enforced against the executors of the Whitlow estate, for the reasons hereinafter stated:

■ First: There was no consideration. The obligation secured by the trust deed on Lot 48 was long past due. An agreement with a debtor to accept less than the amount due on a debt in satisfaction thereof is *nudum pactum* and void. Moreover, while the obligation secured by the trust deed on Lot 47 was made to mature May 27, 1935, the note itself provided "that if default be made in the payment of any interest coupon hereto annexed, or any part thereof, for a longer period than thirty days, then this note, together with the interest accrued thereon, shall at the option of the legal holder thereof, become due and payable, and may be demanded and collected immediately, anything to the contrary notwithstanding." The trust deed also provided that, in event of default, "the whole of said indebtedness shall, without notice . . . become due and payable forthwith" at the option of the holder. Both notes were subject to immediate collection in full; both trust deeds were subject to immediate foreclosure to enforce their collection; and there was no dispute as to their validity or that the principal and accrued interest was unpaid. In view of the long standing default of the last note, the acceptance of less than the full amount in satisfaction thereof would not be a valid consideration for an agreement to compromise the indebtedness secured by the other trust deed for less than its full amount. [Scott v. Parkview Realty & Imp. Co., 241 Mo. 112, 145 S. W. 48; Winter v. K. C. Cable Ry. Co., 160 Mo. 159, l. c. 182, 61 S. W. 606; Young v. Schofield, 132 Mo. 650, 34 S. W. 497; Miners & Farmers Bank v. American Bonding Co. (Mo. App.), 186 S. W. 1139; Krohn-Fechheimer Co. v. Palmer (Mo. App.), 199 S. W. 763, 282 Mo. 82, 221 S. W. 353; Klene v. Campbell (Mo. App.), 213 S. W. 520; Stephens v. Curtner, 205 Mo. App. 255, 222 S. W. 497; Harms v. Fidelity & Casualty Co. of New York, 172 Mo. App. 241, l. c. 249, 157 S. W. 1046, 1049; Goodson v. National Masonic Acc. Assn., 91 Mo. App. 339; Tucker v. Dolan, 109 Mo. App. 442, l. c. 452, 84 S. W. 1126; Biddlecom v. General Acc. Assur. Corp., 167 Mo. App. 581, 152 S. W. 103; Chamberlain v. Smith, 110 Mo. App. 657, l. c. 660, 85 S. W. 645; Sappington v. Central Mut. Ins. Assn., 77 S. W. (2d) 140; Yancey v. Central Mut. Ins. Assn., 77 S. W. (2d) 149; London Fire Ins. Assn. v. Wickham, 141 U. S. 564, 12 Sup. Ct. 84, 35 L. Ed. 860; 1 Sutherland on Damages (4 Ed.) 747, sec. 248; 12 C. J. 322-334, secs. 15-21; 5 R. C. L. 891, sec. 14.]

■ Second: There was no agreement. It is, of course, elemental that it requires both an offer and an acceptance to make a contract, and that neither party is bound unless both are bound. [Gillen v. Bayfield, 329 Mo. 681, 46 S. W. (2d) 571.] No offer, made early

in the year, had been accepted. The parties evidently did not consider that anything had been definitely agreed upon before they went to Pendleton's house in July because they went·there to get an agreement. Moreover, when he first talked to Pendleton, plaintiff did not know that he could raise $3000, could give no assurance that he could ·do so, and, under the circumstances, the proposition to take $3000 was no more than a continuing offer to be accepted by performance before it was withdrawn. [Gillen v. Bayfield, supra.] The offer made by Mr. Pendleton at his house to take $1800 at once for one note and $1200 by August 1st for the other was certainly definitely rejected. Thereafter, the executors had the right to make a separate deal as to each note if they saw fit to do so.

 Third: There was no approval of the proposed compromise by the probate court, as required by Section 234, Revised Statutes 1929. This section is a limitation upon the power and authority of executors and administrators, and it contemplates safeguarding estates by requiring a satisfactory showing to the probate court that the full amount of a debt cannot be collected and that any settlement for less than the full amount is, under the circumstances, beneficial to the estate. [Scott v. Crider, 217 Mo. App. 1, 272 S. W. 1010; In re Hutton's Estate, 92 Mo. App. 132; Jeffries v. Mutual Life Ins. Co., 110 U. S. 305, 4 Sup. Ct. 8, 28 L. Ed. 156.] Anyone so dealing with an executor or administrator must be held to contract subject to the approval of the probate court; otherwise, the protection provided for estates by this statute would be˙ swept away. We do not need to construe the provision of the will, authorizing the conversion of investments, securities and other property "into money without sacrifice in the judgment of my executors," because that provision was *functus officio*. It only applied to raising money to pay legacies, and they were paid prior to July, 1933.

The judgment·is reversed and the cause remanded with directions to dismiss plaintiff's bill. *Ferguson* and *Bradley,·CC.*, concur.

PER CURIAM:—The foregoing opinion by Hyde, C., is adopted as the opinion of the court. All the judges concur.