## VILTER MFG. CO. v. ROLAFF.

### No. 11569.

Circuit Court of Appeals, Eighth Circuit.
March 12, 1940.

Rehearing Denied April 8, 1940.

Richmond C. Coburn and Thomas L. Croft, both of St. Louis, Mo. (Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., on the brief), for appellant.

Milton Yawitz, of St. Louis, Mo. (Rassieur, Long & Yawitz, of St. Louis, Mo., on the brief), for appellee.

Before WOODROUGH and THOMAS, Circuit Judges, and NORDBYE, District Judge.

NORDBYE, District Judge.

This is an action brought by Claire Rolaff against the Vilter Manufacturing Company to recover the balance of minimum royalties owing under a contract. The action was commenced in state court and was removed by the defendant to the United States District Court. Timely objection was made by the defendant to the jurisdiction of the court; first, on the ground that the defendant was not doing business within the State of Missouri so as to subject it to service of process, and second, even though it was doing business within the meaning of the statute, the cause of action was on a contract executed in the State of Wisconsin and in no way related to the business done in the State of Missouri, and therefore no jurisdiction would rest in the Missouri courts to determine the controversy. Evidence was taken on the question of jurisdiction, and the trial court denied the motion to quash service. The case proceeded to trial with a jury, and at the close of all the testimony, both the plaintiff and the defendant made a motion for a directed verdict. The court directed a verdict in favor of the plaintiff in the sum of $7,000, with interest, making an aggregate finding in her favor in the sum of $8,102.50, and the defendant appeals. The principal points relied upon in this appeal are, first, that the court had no jurisdiction, and second, any obligation on the contract was discharged by an accord and satisfaction, or at least a jury question was raised by the evidence on that issue.

The contract was entered into on July 1, 1932, between the defendant and one Walter Rolaff, the husband of the plaintiff, and he later assigned the contract to his wife. Walter Rolaff held certain patents on rotary compressors, and licensed the defendant company for a period of five years to use the patents in the course of its business in the manufacture of large refrigeration machinery. Minimum royalties to be paid under the contract were $9,000 for the first year and $10,000 thereafter for the balance of the term. The $10,000 a year payment was to be made $2,500 quarterly, and Rolaff was authorized under the contract to accept less than the payments stipulated, but was not under any obligation to do so. The paragraph in the contract referring to the reduction of the royalty payments reads: "In view of the fact that conditions may arise during the term of this contract which would make the amount of royalties payable under this contract an excessive burden to party of the first part, it is hereby understood that the party of the second part may, at his option, reduce the percentage of royalty payable at his own discretion. It is understood and agreed, however that such reduction can only be made voluntarily by the party of the second part and is in no way a condition of this contract."

The business of the defendant was apparently less than was anticipated, and in 1934 it applied to the plaintiff, who at that time was the assignee of Walter Rolaff, for reduction in royalties. Negotiations were had between the parties which resulted in a reduction for the year 1934. Under the reduction arrangement, $600 monthly was accepted in lieu of the $2,500 payment due quarterly. This modification, however, was expressly limited to the year 1934. It appears that the defendant continued to make monthly payments of $600 beginning January 1, 1935, and on April 18, 1935, plaintiff wrote a letter to the defendant stating that it had just come to her attention that an error in royalty payments had been made since January 1, 1935; that the modification agreed upon expired on December 31, 1934, and that thereafter the royalty payments must be made in accordance with the contract; that $1,800 had been paid for the first three months instead of the $2,500 quarterly payment, and immediate payment of the balance of $700 was requested. Defendant replied on April 24, 1935, that the

monthly payments had been continued on the assumption that plaintiff would continue the modification for the ensuing year because the same business conditions prevailed, and requested plaintiff to agree to a continuance of the modified schedule until business should improve. As an inducement, the defendant offered a ten per cent royalty on machines shipped to foreign countries. However, plaintiff responded with the contention that the foreign royalties were presently due under the contract and could not be used as a trading item. Further correspondence between the parties resulted. Plaintiff indicated a willingness to negotiate for a modification, but insisted on full information as to the business of the company and made it clear that she would not consider any modification until the balance of the minimum royalties due for the period that had elapsed in 1935 were paid in full. Defendant furnished some information, but neglected to make up the deficiency in the payments as requested, and therefore plaintiff refused to consider or acquiesce in any modification. On May 31, 1935, the defendant company sent a $600 check to the plaintiff, stating that it covered the May royalties. On June 5th, plaintiff acknowledged receipt of the payment stating that she would credit it on the royalty account for 1935, and made it clear that the statement in defendant's letter to the effect that the check covered the May royalty "is erroneous and not in accordance with the terms of the contract." Commencing with June, 1935, the defendant sent a monthly check in the amount of $600, with a statement on the check, "In full payment of all royalties to date." Defendant continued sending the monthly checks with the same recital until the expiration of the contract on July 1, 1937. Each monthly check was accompanied by a letter stating that the check represented full monthly payment of royalties to date. Correspondence passed between the parties during that two-year period, and plaintiff steadfastly maintained that the checks were being accepted only on account. For instance, on June 10, 1935, she wrote to the defendant as follows: "Some time ago, I called to your attention that an error has been made in the royalty payments in the contract between your company and myself. Your office persists in the same error, and I again call it to your attention for correction."

On September 5, 1935, she again wrote a letter, reading in part as follows:

"The enclosed statement shows the condition of the account between us pertaining to the contract existing and in full effect between the Vilter Manufacturing Company and myself. * * *

"The installment payments you are making from month to month are not sufficient to pay your indebtedness and as time goes on the unpaid balance becomes greater.

"This is to put you again on notice, that while I am accepting your installment payments to apply on your debt, I do so without granting for a moment that these payments are payments in full of what you owe, and that your inscription of your installment checks that they constitute payment in full have no validity with me since you cannot change arbitrarily and without my consent the contract in force between us, no matter how many inscriptions to that effect you may endorse on your checks."

On July 13, 1937, she wrote a letter to the defendant which stated, in part:

"I am in receipt of your check for $600 dated June 30, 1937, to apply as payment on contract of July 1, 1932.

"I note that this check carries the legend, 'Payment in full under contract of July 1, 1932.' This is obviously not in accordance with the facts, since you owe me a balance of $7,367.71 of which you have been notified from time to time and for which statements have been rendered you every month. This is evidently an attempt on your part to obtain a receipt in full without having paid your debt in full."

It is admitted that there was no express agreement, written or oral, extending the agreement of May, 1934, when the contract was modified. It further appears that the plaintiff did not request monthly checks after December 31, 1934, but that that practice was continued by the defendant after the agreement expired. The general manager for the defendant testified that he had been advised by an attorney that if plaintiff accepted the $600 checks beginning with January 1, 1935, such acceptance would constitute a modification. At no time, however, did the defendant communicate to the plaintiff the advice that it had received from counsel. Evidently, such advice prompted defendant's course of action. The difference between the aggregate monthly payments made by defendant from January 1, 1935, to the end of the contract, and the minimum royalties

during that period, is $7,000, which is the amount sued for herein and reflected in the directed verdict.

■■ Plaintiff urges that the defendant has entered a general appearance and submitted to the jurisdiction of the court, because after making a special appearance which the court overruled in denying the motion to quash the service, it obtained a continuance and a resetting of the trial of the case; that it further during the trial agreed with counsel for plaintiff that a second cause of action set forth in the complaint might be dismissed. As we understand plaintiff's position, she maintains that where one has entered a special appearance and moved to dismiss for want of jurisdiction of the parties, which motion is later denied, any further action by such moving party must be consonant with its position of "non-presence", and that if he voluntarily enters into any controversy that goes to the merits, he waives his jurisdictional objection and submits to the general jurisdiction of the court. That plaintiff's position is not tenable in federal courts is free from doubt. Southern Pacific Co. v. Denton, 146 U.S. 202, 13 S.Ct. 44, 36 L.Ed. 942; Harkness v. Hyde, 98 U.S. 476, 25 L.Ed. 237. The rule in the state courts will not control. This is not a matter of substantive law. Furthermore, the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, have set at rest any question of waiver under the circumstances. See Rule 12 (b) (d) (g) (h). Having raised the question of jurisdiction, the defendant was not prejudiced by participation in the trial and defending the matter on the merits. In fact, under the new rules, it could have pleaded lack of jurisdiction in its answer with its defenses to the merits and preserved its right to raise the question of jurisdiction on appeal in the event of an adverse ruling. See Proceedings of American Bar Association Institute, at Cleveland, 1938, page 381; Molesphini v. Bruno, D.C., 26 F.Supp. 595; American-Mexican Claims Bureau, Inc., v. Morgenthau, D.C., District of Columbia, 26 F.Supp. 904; Toulmin, et al. v. James Mfg. Co., D.C., 27 F.Supp. 512.

We will proceed first to consider the question of jurisdiction. Defendant is a Wisconsin corporation, with its principal office in Milwaukee. Service herein was made upon one H. H. McKinnies, as agent for the defendant in the State of Missouri.

The pertinent portion of the applicable Missouri statute reads as follows (Section 728, Rev.Stat.Missouri 1929, Mo.St.Ann. § 728, p. 947): "A summons shall be executed * * * where the defendant is a corporation * * * organized under the laws of any other state * * * and having an office and doing business in this state, by delivering a copy of the writ and petition to any officer or agent of such corporation * * * in charge of any office or place of business, or if it have no office or place of business, then to any officer, agent or employe in any county where such service may be obtained * * *."

The agent upon whom service was made represented the defendant in Missouri as sales representative. He had relieved one V. L. Ginaine, who normally represented defendant, but at the time of the service was absent on his vacation. Ginaine had an office in St. Louis, where desk space was rented. The name "Vilter Manufacturing Company" was on the door. The company had its name in the telephone directory of St. Louis, and in the building directory where the office was located. The defendant maintains two offices in Missouri, one in St. Louis and the other in Kansas City, and its corporate activities, as performed from each office, are, for all practical purposes, the same. The company has no property in the State of Missouri. Ginaine did all the company's sales work in the St. Louis area. Orders obtained by him would be remitted to Milwaukee, where they would be either approved or disapproved. While the sales representative had all the dealings with the customers in the State of Missouri and obtained all orders for the company's product, all offers were submitted to the company for consideration and final action. However, while Ginaine was primarily a sales representative, the very nature of defendant's business required a representative who handled various phases of its business which arose in connection with the installation and maintenance of large refrigerating units which were sold in the state. The representative was consulted on technical matters of installation, adjusted complaints, and at times assisted in the supervision of installation jobs. In at least one labor dispute which arose in connection with installation of defendant's products, he represented the company and was able to obtain a result favorable to it. It appears that the settlement of this la-

bor dispute was somewhat different from that which was contemplated by the company's manager, but the settlement was approved. While the company would usually install its machines through an independent contractor, it would at times send its own representative, who would hire local labor in Missouri. Two such installations were carried on during Ginaine's two-year period in St. Louis. Complaints and adjustments for the company in connection with job installations were taken care of by Ginaine. In fact, all complaints were referred to him, and after an investigation, he would send a report to the home office. If money was tendered to the sales representative as payment due the company for business done in the state, such payments would be received at the St. Louis office or the Kansas City office, as the situation might be, and remitted to Milwaukee. Correspondence came to the St. Louis office from various concerns with which the defendant company was doing, and had done, business. Offers were made by Ginaine to prospective customers in the state under the defendant company's name, and acceptances would be made of the offers directed to the St. Louis office. Bids on special machines to be installed in defendant's installations in the state were also received in the St. Louis office. The business thus conducted did not consist of sporadic instances, but generally reflected a long-continued course of business in the state.

The Vilter Manufacturing Company had appointed no agent in the State of Missouri, and, if service of process herein can be sustained, it must appear that the defendant had been doing business in the state so as to manifest its presence therein. In determining whether or not a foreign corporation is doing business within a state so as to render it amenable to process, the facts of the particular case must control. Roark v. American Distilling Co., 8 Cir., 97 F.2d 297. The criterion for questions of state regulation differs from the tests which control in questions which arise in service of process. International Harvester Co. v. Commonwealth of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Liquid Veneer Corp. v. Smuckler, 9 Cir., 90 F.2d 196, 202. The mere maintenance of a sales solicitor in a state in absence of other factors is generally held to be insufficient for a corporation to manifest its presence therein. People's Tobacco Co., Ltd. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas.1918C, 537; Davega v. Lincoln Furniture Co., 2 Cir., 29 F.2d 164; State ex rel. Ferrocarriles Nacionales De Mexico v. Rutledge, 331 Mo. 1015, 56 S.W.2d 28, 85 A.L.R. 1378. But a foreign corporation engaged in interstate commerce is nevertheless subject to service of process under the laws of the state if it is carrying on business therein. International Harvester Co. v. Commonwealth of Kentucky, supra; Busch v. Louisville & N. R. Co., 322 Mo. 469, 17 S.W.2d 337, 339. And we are convinced that the facts herein embrace acts and transactions which were primarily local in their character, and are not such as are merely relevant and appropriate to the interstate sale of defendant's machines. See York Mfg. Co. v. Colley, 247 U.S. 21, 25, 38 S.Ct. 430, 62 L.Ed. 963, 11·A.L.R. 611. A mere recital of the work done by Ginaine indicates that it was not merely incidental to the interstate business done by the company, but that various and sundry additional local acts were performed by him in furtherance of the company's business in the State of Missouri. In other words, defendant has operated in the State of Missouri in such a way as to evidence unmistakably its presence therein. International Harvester Co. v. Commonwealth of Kentucky, supra; Browning v. City of Waycross, 233 U.S. 16, 34 S.Ct. 578, 58 L.Ed. 828; Cone v. New Britain Mach. Co., 6 Cir., 20 F.2d 593; Busch v. Railroad, supra; Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915.

We do not find that State ex rel. Ferrocarriles Nacionales De Mexico v. Rutledge, supra, expresses a doctrine contrary to the views expressed herein. There, the court considered the status of a Mexican railway with no lines in the state, and its activities in the state were, as stated by the court, "in substance merely the solicitation of business." Any remittances handled by the office were "merely incidental service" and "did not affect the character of the St. Louis office as a soliciting agency." The remittances referred to were occasional checks received from local railroads covering charges made by the foreign corporation for necessary emergency repairs upon rolling stock of the local roads, sent into Mexico over the Mexican company lines. It appeared that the agents in St. Louis had no authority either to attend to the collection of these

items or bind the railway by any negotiations or adjustments. This office served as a "convenient conduit." It might be pointed out that the St. Louis office did not sell any tickets and made no collections for passenger or freight services. The court concluded that the situation required a finding that the activities of the railroad were merely solicitation of business, but it recognized that "no all-embracing rule has been laid down as to what constitutes doing business by a foreign corporation so as to make it amenable to personal service of process within a given jurisdiction and a solution of the question depends upon the facts of the particular case." At page 38 of 56 S. W.2d. The solicitation of business for a railroad company which does not even have any lines in the entire United States is not analogous to the many activities employed by this defendant in furtherance of its manufacturing business in the State of Missouri.

Nor does the fact that the controversy herein did not arise out of business done within the State of Missouri deprive the court of jurisdiction. Defendant relies on the doctrine announced in Old Wayne Mutual Life Ass'n v. McDonough, 204 U.S. 8, 27 S.Ct. 236, 51 L.Ed. 345, and Simon v. Southern Railway Co., 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492. But these cases involve situations where service was made upon a state official who should have been designated as the agent of the defendant company by reason of the fact that it was doing business within the state. Service was not made upon any agent of the corporation, and the corporation apparently was not within the state at the time service was attempted. Jurisdiction was sought on the theory that a foreign corporation which enters a state without qualifying is deemed to have appointed a statutory agent on whom process may be served and is estopped to deny compliance with the law. In applying this theory of estoppel, the above cases are authority for the holding that service based upon this fiction may be had only as to causes of action which arise out of business done by the defendant within the state. The adoption of this theory is primarily directed to the protection of local citizens in their dealings with non-qualifying corporations during the period that the latter are doing business in such state. Here, however, service was made upon an agent of the corporation, which at the time was actually present within the state. By voluntarily making itself present therein, it became subject to the jurisdiction of the courts of the state. No cogent reason suggests itself as to any distinction in this regard between such foreign corporation and a domestic corporation. The statute of Missouri covering suits on foreign causes of action reflects none. This reads (section 705, Rev.Stat.1929 Mo.St.Ann. § 705, p. 918):

"Parties to suit when cause of action accrues in another state.

"Whenever a cause of action has accrued under or by virtue of the laws of any other state or territory, such cause of action may be brought in any of the courts of this state, by the person or persons entitled to the proceeds of such cause of action: Provided, such person or persons shall be authorized to bring such action by the laws of the state or territory where the cause of action accrued."

The great weight of authority recognizes the validity of service on an actual agent of a foreign corporation doing business in a state although the transactions out of which the cause of action arose occurred in some other state than the state where the suit is pending. See exhaustive note in 30 A.L.R. 255; Corpus Juris, Vol. 14–A, page 1383; State ex rel. Pacific Mutual Life Ins. Co. v. Grimm, 239 Mo. 135, 143 S.W. 483; Saunders v. London Assurance Corporation, 8 Cir., 76 F.2d 926; London Guarantee Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325; Busch v. Railroad, supra; Tauza v. Susquehanna Coal Co., supra.

In the latter case, Judge Cardozo stated at page 268 of 220 N.Y., 115 N.E. at page 918: "We hold, then, that the defendant corporation is engaged in business within this state. We hold, further, that the jurisdiction does not fail because the cause of action sued upon has no relation in its origin to the business here transacted [and further] * * * If the persons named are true agents, and if their positions are such as to lead to a just presumption that notice to them will be notice to the principal, the corporation must submit."

█ In this case, plaintiff was a resident of Missouri. Service was obtained in the state upon an agent who, it is fair to assume, would give immediate notice to the defendant. The respective incon-

veniences which would result in trying the suit in Missouri as compared to some other forum would not, in view of all the circumstances, seem to militate against the retention of jurisdiction. The practical test for jurisdictional purposes is not controlling, but if it should be resorted to herein, we would not disturb the denial of the motion to quash the service.

■ Proceeding, then, to the merits of the controversy. It is our view that the defendant has failed to establish an accord and satisfaction. The sum owing by the defendant company was definite, certain and undisputed. It is conceded that any waiver of the 1934 payments as stipulated in the contract was limited to that year. Beginning with January 1, 1935, defendant was bound to pay $2,500 quarterly until the end of the contract. The agreement between the parties was clear and unambiguous. It is elementary that a deliberate refusal to pay one's debts cannot create a dispute as a basis for an accord and satisfaction. Here, there was not even an honest doubt as to the amount due under the contract, nor were there any provisions of the contract that were fairly debatable. The evidence reflects an attempt by the defendant to persuade plaintiff into a settlement and accord, but that she at all times refused and declined to accede. There was clearly no intention on the part of the plaintiff to accept the monthly payments made in the early part of 1935 as a consideration for an accord. Aldridge v. Shelton's Estate, Mo.App., 86 S.W.2d 395, 399. She wrote defendant on April 18, 1935, that an error had been made in the payments since January 1st and requested payment of the balance for the first quarter. Defendant responded with a request that she withdraw her demand for the royalty accrued and the amounts called for by the original·contract. At no time did plaintiff assent to defendant's proposal that the 1934 arrangement should be continued. The monthly checks that were mailed to the plaintiff during the first part of 1935 were not sent on any condition. They were merely mailed in hopes ·that plaintiff would consent to a continuance of the 1934 arrangement. She refused to consent, and no prejudice resulted to her rights from anything that occurred.

■■ Defendant asserts, however, that it was in financial difficulties and in fact insolvent in the sense that it was unable to pay its current debts as they became due, and that therefore a payment less than that which was owing constituted under the circumstances a satisfaction of the debt. While the insolvency of a debtor may constitute consideration for the acceptance by a creditor of a sum less than that which is due, the essential element of an accord and satisfaction on that theory is strikingly absent here. It is elementary that there must be a consideration offered and received, either expressly or impliedly. Plaintiff never agreed to accept a less amount because of defendant's financial difficulties, nor did defendant make known to plaintiff that the source of money that was paid was borrowed money, or hold out to her that if she did not accept the compromise offer, there would be no further payments forthcoming. An insolvent debtor cannot make a part payment of a debt, and with nothing more, contend there has been an accord and satisfaction. The case of Dalrymple v. Craig, 149 Mo. 345, 50 S. W. 884, relied upon by the defendant is to be differentiated from the present situation. There, it appears that the debtor, with full knowledge of the parties, obtained funds by borrowing in order to liquidate a mortgage debt by making a part payment in satisfaction of the entire claim, which was not yet due. Furthermore, the creditor received all that the security was worth. The evidence in the instant case does not establish that, because of defendant's financial condition, plaintiff could not have obtained the money due her except by accepting the arrangement offered. The vital difference between the many cases cited by the defendant and the present situation is to be found that herein the parties never agreed upon a settlement. Plaintiff at all times insisted on the fulfillment of the contract.

■■ It was in June, 1935, that defendant began to mark on the checks, "In full payment of all royalties to date." It is defendant's position (a) that there was consideration and that the checks were accepted and cashed at a time when a dispute was in progress between the parties, and (b) that consideration was given since the payments by the defendant were made in advance. That the first proposition is untenable seems evident, because there never was a bona fide dispute as to the amount owing. Defendant endeavored to create a dispute, and hoped that some consideration could be found

in support of its insistence that plaintiff accept a sum less than was owing. The salient principle to be kept in mind is that no liquidated debt is discharged by paying less than the undisputed amount due without an agreement therefor founded upon a sufficient consideration. The mailing of checks with the recital "Payment in full to date," cannot prejudice plaintiff's rights in recovering the total amount which is indisputably due and owing, nor will the acceptance of part payments on a debt under such circumstances prevent the creditor from recovering the balance due. Fire Ins. Ass'n, Ltd. v. Wickham, 141 U.S. 564, at page 577, 12 S.Ct. 84, at page 87, 35 L.Ed. 860. The court in this case stated: "The rule is well established that where the facts show clearly a certain sum to be due from one person to another, a release of the entire sum upon payment of a part is without consideration, and the creditor may still sue and recover the residue. If there be a bona fide dispute as to the amount due, such dispute may be the subject of a compromise and payment of a certain sum as a satisfaction of the entire claim; but where the larger sum is admitted to be due, or the circumstances of the case show that there was no good reason to doubt that it was due, the release of the whole upon payment of part will not be considered as a compromise, but will be treated as without consideration and void."

See, also, Wetmore v. Crouch, 150 Mo. 671, 51 S.W. 738; Ellis v. Mansfield, 215 Mo.App. 292, 256 S.W. 165; Gulfport Wholesale Lbr. Co. v. Boeckeler Lbr. Co., Mo.App., 287 S.W. 799; Wayland v. Pendleton, 337 Mo. 190, 85 S.W.2d 492; Friedman v. State Mutual Life Assurance Co., Mo.App., 108 S.W.2d 156; Zinke v. Knights of the Maccabees of the World, 275 Mo. 660, 205 S.W. 1.

Defendant relies on the case of Halloway v. Mountain Grove Creamery Co., 286 Mo. 489, 228 S.W. 451, 454. In that case, defendant had agreed to receive cream from the plaintiffs under a unilateral contract, and had agreed to pay a stipulated price for one year. Later, after performing for a time, defendant elected to terminate the agreement, which it had the right to do. It offered, however, to continue the buying of cream from plaintiffs at a lower price and made concessions by paying for the services of a tester, who, under the original contract, had been paid by the plaintiffs. The plaintiffs continued deliveries and accepted the services of the tester, who was paid by the defendant, but gave notice that they considered the unilateral contract as a basis for the payment of the cream that was delivered, and thereafter sought to recover from the defendant on the former contract price. The court held that the contract being unilateral had been legally terminated, and that the continued delivery of cream by plaintiffs did not revive the original contract; that the plaintiffs accepted the benefits of the tester furnished by the defendant, and therefore were bound by the alteration that had been made in the price that defendant should pay. The court also referred to the "bona fide dispute between the parties," and that plaintiffs "with full knowledge that defendant was paying to them the card prices and commission to the tester in full of all its liability to them for the cream they furnished, received, and kept the money." Defendant refers us to the following quotation found in the Halloway case, at page 502 of 286 Mo., 228 S.W. at page 454: "'If one accepts a payment upon condition that it is to be received in full satisfaction of his claim, his entire claim has been satisfied, even though he filed a written protest at the time of accepting the amount paid, * * notifying the debtor that he would insist on the balance claimed.' Coal Co. v. St. Louis, 145 Mo. 651, 47 S.W. 563; St. Joseph School Board v. Hull, 72 Mo.App. 403; Lightfoot v. Hurd & Co., 113 Mo. App. 612, 88 S.W. 128; Adams v. Helm, 55 Mo. 468."

This appears to be, with a few slight, immaterial variances, a portion of the syllabus in Pollman and Brothers Coal and Sprinkling Company v. City of St. Louis, 145 Mo. 651, 47 S.W. 563. But it is clear that, in this case, the court in its syllabus was referring to a disputed claim and not to a part payment on a liquidated debt. A reading of this case will permit no other view. In the Halloway case, the amount to be paid under the unilateral contract for the cream was definite and certain, it is true, but that contract was terminated. Thereafter, a dispute arose, which the court characterized as a bona fide dispute, but plaintiffs continued the delivery of cream with full knowledge on their part that the defendant insisted on paying the lower price and that, under the new arrangement, the defendant was paying the

tester. Under these circumstances, the court evidently concluded that the principle set forth in the syllabus of the Pollman case was applicable, because the defendant was paying for the tester with the knowledge and acquiescence of the plaintiffs, and thereby a consideration arose for the accord. It is apparent, however, that in the Halloway case the court did not intend to change or overrule the principles enunciated in the Pollman case, in which the court stated at the outset of its decision at page 656 of 145 Mo., 47 S.W. at page 564: "It is well-settled law that the payment of a part of a debt or of liquidated damages is not a satisfaction of the whole debt, even when the creditor receives the part for the whole, and receipts for the whole demand."

In the case of Zinke v. Knights of the Maccabees of the World, supra, the court in referring to Scott v. Realty Co., 241 Mo. 112, 145 S.W. 48, McCormick v. City of St. Louis, 166 Mo. 315, 65 S.W. 1038, and Pollman Coal Co. v. City of St. Louis, supra, stated, at page 666 of 275 Mo., 205 S.W. at page 2: "* * * There can be no denial of the fact that a part payment of a debt unquestionably due will not discharge the entire debt, even though receipted in full, though based upon an understanding or agreement to that effect, for the reason that there is no consideration to support the agreement. But, as was held by the cases cited, that where there is an honest doubt between the parties as to the amount due, and after due consideration the creditor yields to the debtor's views, and agrees to and accepts the amount which the latter concedes to be due, and gives a receipt in full, and there is no fraud or other ground for equitable relief, the settlement is binding, for the reason that it comes within the principle of accord and satisfaction."

■ Defendant cannot be sustained in its contention that consideration is to be found by reason of the fact that payments were made in advance. At no time from June, 1935, to June, 1937, was defendant making advance payments. The balance due on the contract during that period always exceeded the aggregate monthly payments. There is no support for the view that the monthly payments were of benefit to the plaintiff. The effect of defendant's insistence on making monthly payments was simply to tender to the plaintiff payments on a larger sum that was unequivocally due.

■ Error is assigned because of the exclusion of certain testimony regarding the financial condition of the defendant from 1935 to 1937. However, without determining the merits of such proffered evidence, it appears that it was merely cumulative. Substantially the same testimony was received before and after the exclusion. No prejudice can arise where the facts sought to be brought out were otherwise established. Davis v. New York Life Ins. Co., 8 Cir., 47 F.2d 1051.

■ Defendant asserts that the court erred in directing a verdict, and that under the evidence a jury issue was presented. Plaintiff contends that the question is not before the court because both parties made a motion for a directed verdict; however, in asserting this position, it is clear that plaintiff has overlooked Rule 50 (a) of the Federal Rules of Civil Procedure, which disposes of such contention. The rule provides in part: "A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts."

■ It is recognized that, where circumstances permit of reasonable inferences that there was or was not an accomplished accord, the question is one for the jury. However, the burden to establish an accord and satisfaction rested upon the defendant, and we are inclined to the view that the court was fully justified in determining that there was no bona fide dispute, but rather a pseudo dispute created by the defendant, and that a fair consideration of all the testimony required a finding that the debtor refused to pay a just, liquidated claim and hoped thereby to coerce the plaintiff into a settlement on its terms, or to lull the plaintiff into a situation where a fortuitous accord could be claimed. The defendant failed in its purpose. The court was correct in holding, as a matter of law, that plaintiff was entitled to recover the full amount due on her contract. The judgment is affirmed.